GRAND RIVER DAM AUTHORITY v. THOMPSON.

No. 29688. May 13, 1941.

Rehearing Denied June 3, 1941.

*113 P. 2d 818.*

R. L. Davidson, of Tulsa, Q. B. Boydstun, of Vinita, Gayle M. Pickens, of Miami, and Jesse L. Ballard, of Vinita, for plaintiff in error.

Carey Caldwell, of Vinita, for defendant in error.

CORN, V. C. J. This is an action by the Grand River Dam Authority, a public corporation, created by special act of the Legislature, to acquire by condemnation certain land owned by Willis Thompson. The question of the necessity for the taking of the land for any use or purpose authorized by the act, or incidental thereto, and the reasonableness and good faith of the corporation in the attempted exercise of the right of eminent domain are issues raised by the answer of the defendant. After hearings were had upon these issues the trial court rendered judgment permitting the taking of a certain portion of the land sought, and denying plaintiff's petition as to the remainder. From such judgment the plaintiff brought this appeal, and the defendant brought his cross-appeal, both parties seeking a reversal of said judgment insofar as their respective claims or rights were adversely affected. We continue to refer to them herein as plaintiff and defendant, as they appeared in the trial court.

The plan for the construction of the dam calls for a public road to be built across the top of the dam, the same to take off therefrom in a northwesterly direction. Later the road was extended by local authorities from the west end of the dam in said direction across a tract of land then owned by the Grand-Hydro, but subsequently acquired by the plaintiff. Next on the west side of said tract of land is the land owned by defendant, which was platted for townsite purposes before the dam was completed and before the public road was surveyed or constructed across the same. Notwithstanding the fact that the proposed road cut diagonally across that part of the platted townsite lying along the shoreline of the lake, the defendant donated the right of way for the road on the theory that the road would benefit the townsite he was promoting. Thereafter, on March 12, 1939, the plaintiff filed condemnation proceedings in this case seeking to condemn a strip of land on each side of the road, designated as tract A and tract B, extending entirely across defendant's platted townsite. The proposed taking of tract B would deprive the defendant of all his land between the road and the shoreline, and the taking of tract A would shut off the entire townsite from the highway and from the lake, and would require the inhabitants of the town to travel the full distance around this narrow but long strip of land in order to get out upon the highway. This would practically destroy the value of defendant's land for townsite purposes, al-

though it is most favorably situated for such purposes.

The plaintiff presents its case on appeal under one general proposition, namely:

"The necessity for the exercise of the power of eminent domain is vested in the Grand River Dam Authority and the lower court had no power to interfere with the reasonable exercise thereof."

That part of the act relied on in support of the right to take the property is as follows:

"The District shall have and is hereby authorized to exercise the following powers, rights and privileges: . . .

"(e) To acquire by purchase, lease, gift, or in any other manner, and to maintain, use and operate any and all property of any kind, real, personal, or mixed, or any interest therein, within or without the boundaries of the District, necessary or convenient to the exercise of the powers, rights, privileges, and functions conferred upon it by this Act;

"(f) To acquire by condemnation any and all property of any kind, real or personal, or mixed, or any interest therein within or without the boundaries of the District necessary or convenient to the exercise of the powers, rights, privileges and functions conferred upon it by this Act, in the manner provided by general law with respect to condemnation; . . .

"(i) To construct, extend, improve, maintain, and reconstruct, to cause to be constructed, extended, improved, maintained, and reconstructed, and to use and operate any and all facilities of any kind necessary or convenient to the exercise of such powers, rights, privileges and functions; . . .

"(p) To do any and all other acts or things necessary or convenient to the exercise of the powers, rights, privileges or functions conferred upon it by this Act or any other Act or law. . . ." 82 Okla. St. Ann. § 862, Session Laws 1935, p. 351 (S.B. No. 395) sec. 2.

The board of directors of the Grand River Dam Authority adopted a resolution declaring the necessity of acquiring the property involved in language as follows:

"Whereas, it is necessary that the Grand River Dam Authority acquire the absolute, entire and unencumbered fee-simple title to the lands hereinabove particularly described for the construction, operation and maintenance of the Grand River Dam Project and for the construction, operation and maintenance of the Grand River Dam and hydro electric power plant, spillways, bridges, roadways, and supports for same."

It is contended that this resolution determined the necessity for acquiring said land and that such determination was final and not subject to judicial inquiry. The case of Arthur v. Board of Commissioners of Choctaw County et al., 43 Okla. 174, 141 P. 1, is cited as authority sustaining the theory that such determination is conclusive and that the question of the necessity of taking property cannot become an issue in condemnation proceedings, quoting from the syllabus of the case the following:

"In this state the necessity, utility, or expediency of the exercise of the right of eminent domain is vested in the Legislature, or the Legislature may delegate that power to the public officials, and a court has no power to interfere with the reasonable exercise thereof."

The case involved the right of the county commissioners to open a public road on petition of a majority of the resident freeholders of the township as provided by section 7553, Rev. Laws 1910, wherein such petition is made conclusive evidence of the public necessity for the road.

The case of Pippen v. Board of Com'rs of Okmulgee County, 87 Okla. 177, 209 P. 292, also involving the taking of land for public purposes, was also cited. The Pippen Case followed the Arthur Case, and in both of these cases this court distinguished between the question of necessity and the question of public use, the question of necessity being legislative and the question of public use being judicial.

Likewise, the cases of State ex rel. Dabney v. Johnson, 122 Okla. 241, 254 P. 61; Hennen v. State ex rel. Short, 131 Okla. 29, 267 P. 636; Bilby v. District Court, 159 Okla. 268, 15 P. 2d 38, which are highway cases, all hold that the necessity of the exercise of the right of eminent domain is a legislative question, and that the courts have no right to interfere with the reasonable exercise thereof. It is not to be implied, however, from these cases that the question of public use may not be raised in any case where private property is sought to be taken for public use, for the Constitution of this state provides in article 2, sec. 24, that:

"In all cases of condemnation of private property for public use, the determination of the character of the use shall be a judicial question."

The cases cited by the plaintiff are not applicable to the particular situation involved in this case. The defendant does not question the necessity, expediency, or propriety of the exercise of the power of eminent domain in this case, but he does raise the issue as to the character of the use to which his property is sought to be subjected. The defendant alleges that the plaintiff does not intend to use the land for any purpose within the act of the Legislature creating the Grand River Dam Authority; that with the exception of about one acre that is below the high-water level, the land is not situated where it can be used for any of the purposes within the act; but that the plaintiff is acting arbitrarily and in bad faith and is seeking to destroy the defendant's townsite in order to benefit a competing townsite project on land adjoining that of the defendant.

The facts in this case bring it within the rule followed in the case of City of Tulsa v. Williams et al., 100 Okla. 116, 227 P. 876, wherein the city of Tulsa sought to condemn certain lands for the purpose of constructing a water reservoir for its water supply. It was alleged in the petition that it was necessary for the public use that these lands be acquired. The owners of the lands denied the allegation in their answer, alleging that the lands were above the high-water level and were therefore not required. The testimony of expert witnesses showed that these particular tracts of land were above the high-water line, but that they were necessary for the protection of the city's water supply from pollution and for other reasons. The trial court upheld the right of the city to condemn the lands below the high-water line, but denied the right, as a matter of law, to condemn the lands above the high-water line. The judgment was reversed on appeal and the lands were held necessary for public use upon the showing that it was necessary for the city to control this land to prevent pollution of its water supply. The law of the case is stated in paragraphs 1 and 2 of the syllabus, as follows:

"1. The right to establish and create a water reservoir, either within or without the corporate limits of municipal corporations, has been conferred upon municipal corporations by the law of Oklahoma; and the necessity therefor and the location thereof are legislative questions for the law-making power of such municipalities and are not for the courts; but when the question is raised as to the necessity for taking any particular piece of property for the public use, such question presents matter for judicial determination.

"2. Where a municipal corporation seeks to create a waterworks plant and water reservoir outside its corporate limits, it has a right, under the law of eminent domain, to condemn such land as shall be submerged by its reservoir up to the high water line; and also has the right to condemn such margin of land above the high water line of its reservoir as may be needed, where the perpetual use and absolute control thereof is required, to protect its water supply from pollution and for policing and patroling the shore of its reservoir; but how much margin above the high-water line should be taken for such purpose is a judicial question to be determined by the court upon the evidence of necessity."

In the body of the opinion is found an illustration of the distinguishing fea-

tures of matters for legislative determination and a rule is laid down defining the limits of legislative action. The language of the court is as follows:

"The petitioner's necessity for a water reservoir, and where it shall be located, where the dam across the Spavinaw creek shall be built, what buildings are to be erected and their location, and the means of conveying the water and the lines over which its conduits are to be constructed, are all matters for legislative determination, and when such matters have been legislated upon by the city government there is no matter concerning them for judicial inquiry. As to what lands will be overflowed at the low water and flood stage is a matter to be determined by competent engineers, and when this is done there is no question but that such lands are needed for reservoir purposes. All reasonable men will agree to that, and when such a question has been determined there is nothing for judicial inquiry, and the resolution of necessity ends the matter, or at most there is no question except to find if such matter has been determined in such a way as to satisfy the court of the correctness of the determination. But a point may be reached where the necessity is not conceded by all reasonable men, and when that point is reached, there is a matter for judicial inquiry."

The court further concluded that the legislative arm of the city government was not the sole judge as to what property was necessary for its water project above the high-water line. That above the high-water line it becomes a disputed question as to what land or how much is necessary, and that based upon the allegations of the petitioner that the land is necessary for public use, and the denial of the necessity by the land owners, a question of fact was presented for judicial decision based upon evidence.

This court has passed upon a number of cases wherein the reasonableness of the exercise of the right of eminent domain was the issue. In the case of St. Louis & S. F. Ry. Co. v. Mann, 79 Okla. 160, 192 P. 231, paragraph 2 of the syllabus, the rule is stated as follows:

"A public service corporation's delegated power of eminent domain is not unlimited, and cannot be used for the purpose of acquiring property other than whatever is reasonably necessary for its corporate purposes."

In the case of White v. City of Pawhuska, 130 Okla. 156, 265 P. 1059, paragraph 2 of the syllabus is as follows:

"The word 'necessity' in connection with condemnation proceedings does not mean an absolute, but only a reasonable necessity, such as would combine the greatest benefit for the public with the least inconvenience and expense to the condemning party and property owner consistent with such benefit."

In the case of Stinchcomb et al. v. Oklahoma City, 81 Okla. 250, 198 P. 508, this court held:

"The taking of private property for public use is the exercise of sovereign power, and is controlled, in this state, by the provisions of section 24, art. 2, of the Bill of Rights of our Constitution, and these provisions must be construed strictly in favor of the owner and against the condemning party."

In the case of Watkins et al. v. Board of Com'rs of Stephens County, 70 Okla. 305, 174 P. 523, paragraph 5 of the syllabus, this court said:

"In this state when private property is sought to be taken for public use without the consent of the owner under statutory or constitutional authority all presumptions indulged are in favor of the person whose property is sought to be taken without his consent."

In 20 C. J. 629, § 113, the textwriter states the rule in language as follows:

"To authorize the condemnation of any particular land by a grantee of the power of eminent domain, a necessity must exist for the taking thereof for the proposed uses and purposes, and, while such grantee is allowed a reasonable discretion in determining the necessity and extent of the appropriations,

whether any necessity exists to warrant such appropriation is a judicial question on which the landowner has a right to be heard."

At section 116, 20 C. J., p. 634, the text states:

"An excessive appropriation, or an appropriation of more land than is required for the contemplated purpose, is beyond the scope of the delegated power, even though it does not exceed the amount specified in the statute, and the courts will interfere to prevent an abuse of discretion or arbitrary exercise of the power. If the statutes authorize the taking of more land than is necessary for the intended use it will be unconstitutional and void."

The citation of further authorities would seem unnecessary to disprove the contention of the plaintiff that a judicial question is not presented by the issues of this case.

Turning to the evidence, we find three witnesses were called to testify on behalf of the plaintiff, namely: W. R. Holway, chief engineer, J. W. Newman, of the land department, and R. L. Davidson, chief counsel.

Mr. Holway testified that the Authority had acquired between 12 and 14 acres of land on the east end of the dam adjacent to the town of Disney, and that it had acquired by purchase on the west end of the dam the Grand-Hydro tract of 14.61 acres and another small tract of 1.2 acres on the west end. This land lies between the west end of the dam and the Willis Thompson land involved in this action. That the power house is situated down in the old river bed on the west side, and a switchyard occupies about an acre immediately west and upon the west bank, and that adjacent to the switchyard on the west is a space of about three acres used for high tension switching equipment for outgoing transmission lines. That about four acres of the 15.81-acre tract is used for such equipment, and the remaining 12 acres at this end of the dam will be used for park purposes. That somewhere in this park area will be erected an observation platform and some pub-

lic rest rooms. That an administration building and four or five houses for employees at the powerhouse will be built in this vicinity. That the roadway across the Thompson land is 100 feet wide, and that Thompson had granted an easement to the Authority across this land for transmission lines. He testified that the Thompson land was desired by the Authority principally as an extension of the park area. He stated that the switchyard and all other facilities are fenced and that the remainder of the area will be grassed and landscaped.

Mr. Newman testified that he had had experience in purchasing land at other government projects, and that he thought additional space was necessary around the west end of the dam, for the reason that it might be necessary to do a certain amount of patrol work on account of the traffic that will pass through this area. He stated that no machinery or other equipment would be placed on the Thompson land.

Mr. Davidson testified that he considered additional land necessary to prevent congestion of traffic at the dam, and additional ground for sight-seers to park their cars off the highway while viewing the scenery about the lake.

On behalf of the defendant, Mr. Thompson testified that he owned the land on which the townsite was situated and that he had it platted for townsite purposes; that he donated a public roadway across his land; that he intends to restrict the water front to better types of buildings and to landscape it to conform to its surroundings. That tract A sought to be taken cuts off the entire townsite from the public highway and tracts A and B both cut off the townsite from the water front and destroy the value of his property for townsite purposes.

Walter Eaton testified that he had had 15 years' experience in developing resorts; that he lived at Disney and had helped to develop that townsite; that the Thompson property was valuable for townsite purposes, but if these strips of land were taken it would practically

destroy the value of the property. He estimated that a million people would visit that area every year; that most of them would be tourists, and that this was not a proper place for picnic grounds, as these people would want accommodations, such as filling stations, garages, hotels, and like establishments to serve the tourist trade.

Cyrus Avery, former State Highway Commissioner, testified that he was familiar with traffic problems; that he had visited many projects such as this one, and had developed properties at public resorts; that he is familiar with the Willis Thompson townsite and its surroundings; that he had a proposition pending with Thompson to develop this townsite, but would not be interested in it if these two strips of land are taken cutting off access to the highway and to the water front. He proposed to restrict this part of the townsite to essential business establishments to serve the tourists and visitors stopping there, and to construct good buildings to afford suitable accommodations, and to beautify the landscape along the water front.

Other witnesses testified relative to the detriment that would be caused by the condemnation of the property involved, but this testimony has no particular bearing upon the question of necessity or of public use.

In addition to hearing the testimony and other evidence in the case, the trial court visited the scene of the controversy and viewed the situation for himself, and thereafter entered judgment awarding the plaintiff 3.3 acres from the east side of said tracts, and denying plaintiff the remaining 1.7 acres on the west side thereof. The land awarded joins the land already owned by the Authority and extends the boundary thereof westward.

The issues present a question of fact as to the reasonable necessity and as to the character of the use of the land sought to be taken, and upon consideration of the entire record, we are of the opinion that the judgment of the trial court is not against the clear weight of the evidence, and that the same should be, and is, affirmed.

RILEY, OSBORN, HURST, DAVISON, and ARNOLD, JJ., concur. WELCH, C.J., and BAYLESS and GIBSON, JJ., absent.