DELFELD v. CITY OF TULSA et al.

No. 30559. Dec. 1, 1942.

*131 P. 2d 754.*

Frank Hickman, of Tulsa, for plaintiff in error.

E. M. Gallaher, John W. McCune, and Thos. I. Munroe, all of Tulsa, for defendants in error.

CORN, V. C. J. The question raised by this appeal involves the right of a municipal corporation to condemn land, to which plaintiff held equitable title, for what was declared to be a public use.

March 14, 1941, the city commissioners of the city of Tulsa adopted a resolution declaring a public necessity for acquiring certain land for the purpose of an additional airport and flying field. A portion of the land sought to be acquired was the tract in question. Notice was served upon the defendant and the secretary of the Commissioners of the Land Office, defendant having purchased the land from the state at a school land sale. Notice was given that the city would apply for an order appointing appraisers to value the land for condemnation.

The city filed its petition and application to appoint appraisers, in which it alleged its right to take by eminent domain; that defendant owned the property, subject to a vendor's lien; that the city had made diligent effort to purchase the land but had been unable to reach an agreement. The petition then asked appointment of appraisers.

On the day specified in the notice defendant filed an answer, admitting the city's right to take by eminent domain, and the adoption of the resolution declaring the necessity of taking. Further answering, defendant denied he

was the legal owner, but asserted he held only equitable title, under a certificate of purchase from the Land Office; that the city did not intend to take this land for an additional airport, but that it intended to convey same to the United States as a site for a bomber assembly plant; and further denied the city intended to use the land for a municipal airport.

Defendant then denied the city had made an effort in good faith to purchase the land, or that the city had the legal capacity to negotiate for the purchase; and that the city had tried to procure an option from him in favor of a third party, which was not binding upon him. Defendant then prayed for a determination of the character of the use the city intended to make of the land, and a judicial determination of the city's right to condemn the land in question.

The trial court found the land was to be used to expand the municipal airport, and that only a portion thereof was to be used as a bomber plant; that, directly or indirectly, the land would all become part of the existing airport; that the use for which the city sought to condemn the land was an authorized public use for which the city could exercise its right of eminent domain. The court then sustained the city's application for appointment of appraisers to determine the value of the land and appointed appraisers.

Defendant filed a motion for new trial. April 1, 1941, the appraisers returned their report, assessing defendant's damages at $6,000. Defendant then filed a supplemental motion for new trial, in which he asserted the notice required by law was not given to all owners interested in the property, to wit: Water Improvement District No. 5 of Tulsa county, Okla., a municipal corporation, which claimed a lien by virtue of certain improvement bonds, and the Atchison, Topeka & Santa Fe Railway Company, a corporation, which asserted a claim to 2.76 acres of the land. Defendant asked that the court's deter-

mination of the character of the use be vacated, and that these corporations be joined as parties before the court made such a determination.

The motion and supplemental motion for new trial and defendant's objections to the appraisers' report were overruled, and defendant appeals. Before turning to the issues presented it is pertinent to point out that our holding herein might seem to be in conflict with the rule laid down in Wrightsman v. Southwestern Gas Co., 173 Okla. 75, 46 P. 2d 925, wherein we held the question of the right to condemn to be jurisdictional, to be determined by the court as distinguished from the judge thereof, *after* appointment of appraisers and upon the hearing of objections and exceptions to their report. However, in the instant case, the circumstances are such as to avoid any necessity for application of that rule, and this without in any manner striking down the rule therein announced.

On March 27, 1941, the parties appeared for the hearing on plaintiff's application for appointment of appraisers. It was pointed out at that time that the only question was a judicial determination of the use, and the question was raised then whether this determination should be made prior to the time of appointment of the appraisers, or after they had returned their report, at which time the question could be raised by objections to confirmation of their report. Both parties, and the court, tacitly agreed to a determination of the question at that hearing. The court heard all the evidence, and at that time decided that the condemnation was for a public use.

In view of the rule announced in the Wrightsman Case, supra, this action would appear, on its face, to be contrary to the procedure indicated in that case, inasmuch as the determination of the judicial question was made while the judge was sitting as a judge, and not as a judicial determination of the court. Thus, under the rule announced, the determination as to this use would be a nullity, having been made before the

court acquired jurisdiction of the question as a court, were it not for the fact that the record discloses matters which preclude the application of such a rule.

After the appraisers returned their report defendant filed objections thereto. April 21, 1941, when the matter came on for hearing, the court stated that the determination he had made on March 27, 1941, had been intended as a judicial determination of the city's right to condemn. However, if defendant desired to bring in additional parties, or raise any question as to this issue, the court would determine the matter again, but his determination would be the same as at the first hearing.

Under this record we are of the opinion that there was a judicial determination of the question of the city's right to condemn, and the fact that the court considered the evidence upon which his determination was based before the appraisers had been appointed or before they had returned their report and objections had been filed thereto, does not serve to destroy the force of the trial court's finding, in view of the fact that the record clearly shows the court did reconsider the evidence on this question.

We are, therefore, of the opinion that the procedure in the instant case sufficiently met the requirements set forth by the rule in the Wrightsman Case, supra, and that the decision herein does not conflict with our holding in that case.

The grounds for reversal of the trial court's judicial determination of the issue are presented under seven specifications of error, with accompanying argument. However, we are of the opinion that all matters presented may be disposed of by determining three questions: First, Was this land condemned for a public use? Second, Did the district court of Tulsa county have jurisdiction to condemn the land involved? Third, Was there a clear disagreement between the parties as to the price to be paid therefor, prior to institution of proceedings?

The paramount issue involved is whether the city was condemning this land for a public use. The facts are such that prior pronouncements of this court are of no great value in determining whether this is such a use as is contemplated when the authority to exercise the right of eminent domain is delegated to a municipal corporation. Approximately 1,000 acres of land were to be procured, about 300 of which were to be deeded to the federal government as the site of an aircraft plant. The new portion of the airport has already been joined with the old airport by an extensive system of runways. The operation is, in a manner of speaking, conjoint, and the improvements were made possible only by participation of the federal government in the project.

Defendant's argument is that it is an elementary principle that private property can only be condemned for public use, and it is clear that the use to be made of this land is a private use, since the purpose for which the city seeks to condemn the land, viz., and additional airport and flying field, is not the purpose for which the city in fact intends to use the land, since the city is not going to retain the land, but is deeding it to the federal government. While defendant's entire argument is to the effect that, under the circumstances, this cannot be a public use, there is no attempt to show wherein the holding of this land by the federal government for operation of an aircraft plant precludes the possibility of this being a public use in the true meaning of the term. In Bilby v. District Court, 159 Okla. 268, 15 P. 2d 38, it is pointed out in the body of the opinion that a public use need not be the use of the entire public, but that 'it may be a use for the benefit of a restricted locality, so long as this is in common and not for individuals.

The impossibility of laying down by any precise, all-inclusive definition as to what constitutes a "public use" is generally recognized. The disagreements

over the true meaning of this term, and the lengths to which this meaning shall be extended, are as widely varied as the many different expressions used in attempting to define the term itself.

In Nichols on Eminent Domain (2d Ed.) vol. 1, § 45, the following definition is given:

"It is a public use for which property may be taken by eminent domain, (1) to enable the United States or a state or one of its subdivisions to carry on its governmental functions, and to preserve the safety, health and comfort of the public, whether or not the individual members of the public may make use of the property so taken, provided the taking is made by a public body; (2) to serve the public with some necessity or convenience of life which is required by the public as such and which cannot be readily furnished without the aid of some governmental power, whether or not the taking is made by a public body, provided the public may enjoy such service as of right; (3) in certain special and peculiar cases, sanctioned by ancient custom or justified by requirements of unusual local conditions, to enable individuals to cultivate their land or carry on business in a manner in which it could not otherwise be done, if their success will indirectly enhance the public welfare, even if the taking is made by a private individual and the public has no right to service from him or enjoyment of the property taken."

And in this same text, section 54, p. 160, it is stated:

"It is universally conceded that the government of any sovereign state possesses the power to take and use or to take and destroy private property in behalf of the public health and safety, upon payment of just compensation . . . .

"Land may accordingly be taken by public authority in the exercise of the power of eminent domain for purposes not directly connected with the administration of the government, but which pertain to the security and health of the public at large. The taking of land for military purposes, such as arsenals, armories, navy yards, fortifications, and military camps, and, in time of war the seizure of ships, munitions and supplies may perhaps be said to fall within this branch of governmental power and is unquestionably constitutional."

See Kohl v. United States, 91 U. S. 367, 23 L. Ed. 449.

As in the matter before the court, and as a direct outgrowth of our present war situation, two similar cases have been decided recently in our neighboring state of Colorado, involving essentially the same problem. In McNichols v. City and County of Denver (1937) 101 Colo. 316, 74 P. 2d 99, the city of Denver adopted an ordinance providing for submission to the voters the question of incurring $750,000 bonded indebtedness for the purpose of buying land to be donated to the federal government to be used as a site for an air corps technical school and bombing field. The ordinance was adopted, and the city auditor sought a declaratory judgment as to whether the city had authority to issue bonds or levy taxes in payment of the bonds.

In holding the bond issue valid, as being for a local and municipal purpose, the Supreme Court of Colorado pointed out that there has been a tendency on the part of the courts to extend the permissible range of projects of this nature, and not to restrict municipalities in the exercise of this right in pursuit of undertakings which promote the general welfare.

In the more recent case of Fishel v. City and County of Denver (1940) 160 Colo. 576, 108 P. 2d 236, the city of Denver instituted proceedings to condemn land belonging to Fishel, the land to be given to the federal government for an air training school. The question was raised as to the city's authority to exercise the right of eminent domain in such instances, and the contention was made that the state was without power to condemn property for the use of the United States, and so could not delegate such power to a municipality. In passing upon the question the court said:

"In McNichols v. Denver, supra, we determined that this project was a public one. We further held, upon the grounds specified in the opinion, that

it possessed the necessary local and municipal character to empower the city to participate in its creation to the extent contemplated. Concerning the effect of the duality of the association of the United States and the city, we said (101 Colo. 316, 74 P. 2d 104): 'The mere fact that the control and management of the air school will be retained by the federal government through the War Department obviously does not create an exclusive federal purpose so as to debar the proposed participation by the city as not being a proper local and municipal purpose.' Where a state or a municipality under its authorization seeks to take land under the right of eminent domain for a lawful, local state or municipal purpose, the circumstance that such land is later to be turned over to the United States to better effectuate the public object of the taking is no valid objection to the condemnation. Lancey v. King County, 15 Wash. 9, 45 P. 645, 34 L.R.A. 817; State v. Milwaukee, supra; Rockaway Pacific Corporation v. Stotesbury, supra; and Via v. State Commission, supra. See, also, Gilmer v. Lime Point, 18 Cal. 229, Branch v. Lewerenz, 75 Conn. 319, 53 A. 658; Reddall v. Bryan, 14 Md. 444, 74 Am. Dec. 550, wherein it is held that property taken for the use of the general government is taken for a public purpose for which a state may exercise its power of eminent domain. Although perhaps beyond the scope of our inquiry, it is said on this subject, in 1 Lewis on Eminent Domain (3d) sec. 309: 'It seems to us . . . that property taken for the use of the national government, being for the use of all the people of all the states, is certainly for the use of the people of that state where it is located, who would be likely to be especially interested in the improvement to be made.' "

Without carrying this discussion further, or multiplying the authorities on the question, we conclude that the use for which the land in question was condemned was clearly a "public use," inuring to the benefit of the citizenry of the entire country, and is such a use as provides the basis for a municipality to invoke the aid of the right of eminent domain.

Having declared the city's right to condemn the land, it next becomes important to decide whether the proper procedure for condemnation was followed; or whether, as urged by defendant, the district court was without jurisdiction to hear and determine this proceeding in condemnation by reason of the provisions of 27 O. S. 1941 §§ 1, 2, 3. Defendant urges, in this connection, that the method here pursued was in accordance with the statutory procedure for condemnation of private property for public use. However, defendant asserts that the sections of the statute, supra, provide an entirely different method to be followed when the condemnation is of state lands. This, in turn, is based upon the argument that, since this was school land, title to which remained in the state until paid for, the proceedings could only be directed against the state. It is in this connection that, for the first time, defendant raises the question of the trial court's jurisdiction to determine this matter.

The statutes, supra, provide a method for bringing condemnation proceedings against "lands set apart for the use and benefit of the State of Oklahoma for public schools, for public buildings and educational institutions." These statutes provide a different procedure in condemnation than that which is provided by 66 O. S. 1941, ch. 2, which contains the general provisions relating to condemnation of private property. Defendant urges the district court did not have jurisdiction here, because the state owned the legal title to the land and there was a failure to follow the provisions of 27 O. S. 1941, supra.

We find no merit in this argument. Section 32, art. 6, of our Constitution provides that certain state officials constitute the Commissioners of the Land Office, to have charge of the sale and disposal of school land. Our statutes set forth the procedure to be followed in disposing of such land, and likewise contain provisions for land acquired by mortgage foreclosure, such as the land with which we are concerned here. And this acquisition and disposal is handled by an entirely different method. It is clear the provisions urged by defendant

as being controlling here have no application. Otherwise the constitutional provision and the legislative enactments regarding the handling of such land by the Commissioners of the Land Office would be in conflict and of no force.

In this connection, defendant further contends that, if the above contention is without merit, the proceedings must still be held void for the further reason that, prior to filing the action, no effort was made to agree on terms with the state.

29 C. J. S., Eminent Domain, § 224, p. 1170, states:

"Parties to negotiations. Where the statute provides that there must be an attempt to agree with the owner, the word 'owner' is not restricted to the holder of the fee. However, a failure to agree with the owner is sufficient, although there is no attempt to agree with one who holds a vendor's lien on the property, or who holds a contract for the purchase of the property; and it is not necessary to seek the consent of a mortgagee, if the mortgagor refuses nis consent. . ."

Furthermore, it is generally held that a failure to join one owner in condemnation proceedings invalidates those proceedings only as to him, and one who is joined in a condemnation proceeding cannot complain that others having some interest in the land are not made parties. Nichols on Eminent Domain (2d Ed.) vol. 2, § 338, p. 937.

Defendant also contends that, after the court determined the right to condemn, it was pointed out to the court in the supplemental motion for new trial that interested parties held some interest in this property, but had not been joined in the action. We are of the opinion this failure to join the parties was not a matter to be complained of by defendant. When the district court decided the issue as to the right to condemn, these parties were not barred. Certain rights attached to them at that time. When and in what manner they chose to enforce such rights is no concern of this defendant, and cannot be said to provide a ground for reversal of this judgment.

The third question raised by defendant is the contention the trial court erred in admitting certain evidence, and in excluding evidence offered by defendant. This is based upon the argument that the city made no good faith effort to purchase the land, but was in fact without legal capacity to negotiate for the land, had no funds with which to purchase at the time the offer was made, by an individual who offered a sum for an option to be taken in his own name.

In Nichols on Eminent Domain, supra, § 378, this matter is discussed, and it is therein pointed out that an offer need not be made in such a way that acceptance by the owner effects a binding contract. The reason for this is obvious. The city could not have condemned this land and taken possession without first paying the money. As is said there:

"When the taking is by a municipal corporation, and the statute which authorizes the taking requires an attempt to agree, the municipality has power to negotiate, although the statute does not specify what officer is to do the negotiating."

And, in Bilby v. District Court, supra, this court announced the rule that the landowner cannot inquire into the source of the money to be paid for the land condemned.

The evidence shows that an agent of the city sought to procure an option on this land prior to the action. It is the defendant's theory that this offer to purchase an option was only unilateral in nature, and not an offer of the city. Defendant refused to execute the option at $85 per acre, ostensibly because he was informed the city was paying a greater price for some of the land. Defendant then indicated that he would take a higher price per acre. The record shows that at a conference between defendant and certain city officials the

mayor declared the land was not worth more than $85 per acre and defendant testified he was not willing to sell at this price. In view of this evidence the trial court stated:

"Of course, there is a stalemate between the parties to the action. The city has elected to condemn the property and it has a right to do that and that is the right of eminent domain, and in so far as the issue, whether an offer has been made in so many words, or rejection has been made in so many words, after all, that is kind of playing horse with the situation. The city made an offer—at least it wants to buy this at one price, and he wants another price and the city refuses to buy at that price, so there is a definite stalemate which would authorize, in so far as that issue is concerned, the institution of prosecution of these proceedings, and the court so finds."

Whether the city had the ability to pay for any other tract of land was not properly an issue in this action. The only issue was whether the city had offered to buy at a price and defendant had refused to sell at such price. In view of the record we are of the opinion the finding of the trial court in this respect was correct, and must be sustained.

Defendant also predicates error upon the trial court's action in requiring him to assume the burden of proof. The petition recited the resolution of necessity for acquisition of this land, and other essential allegations showing the right of the city to condemn. Defendant denied the city's intention to acquire the land for the purpose specified, or that the city had made diligent effort to purchase the land. It is defendant's theory that the issues thus raised placed the burden of proving the affirmative of the allegations upon the plaintiff, and that the trial court erred in requiring defendant to assume the proof.

When, as is the case here, a municipal corporation is vested with the right of eminent domain, and in the exercise of such right begins proceedings to take the land by formally declaring the necessity for which it takes, and the use for which the proposed taking is to be made, the necessity of taking is determined, inasmuch as the Legislature, having granted this power to the municipality, has settled the question of necessity or expediency. This leaves only the question of whether the taking is for a proper public use. Other considerations are open to attack by other means, but are not a proper subject of consideration in the condemnation proceedings. The defendant could not properly raise the issue that the city intended to acquire this land for some other purpose. All he had a right to contest in the condemnation proceeding was whether the use to which the property was to be put was a public use.

When the city, by resolution, declared the necessity for condemning this land, for a declared purpose, it established a prima facie case of necessity, and the burden then shifted to the defendant to show that such taking was not for a public use.

In 20 C. J., Eminent Domain, § 382, it is pointed out that some authorities hold to the rule that the burden is upon the landowner to prove that the proposed use is not a public use, and this rule is extended to include instances where the condemnor is a state or municipality. Gilmer v. Lime Point, 18 Cal. 229; Henderson et al. v. City of Lexington, 132 Ky. 390, 111 S. W. 318; 22 L. R. A. (N. S.) 20; Weiss v. Louisville Sewerage Com'rs, 152 Ky. 552, 153 S. W. 967; State v. Montevideo, 142 Minn. 157, 171 N. W. 314; Cruse & Sons Co. v. Reading County, 302 Pa. 211, 153 A. 350, syllabus 4 of the latter case stating:

"Burden is on landowner seeking to enjoin railroad from constructing branch line, to show clearly that proposed construction is not for public use."

We are unable to see wherein the defendant was, in any manner, prejudiced by being required to assume the burden of proof, when the sole issue was whether the use to which this land was to be put was a public use such as would

authorize the municipality to exercise its right of eminent domain.

Judgment affirmed.

WELCH, C. J., and OSBORN, BAYLESS, and HURST, JJ., concur. GIBSON, J., concurs in conclusion. RILEY, DAVISON, and ARNOLD, JJ., absent.