BUSH et al. v. OKLAHOMA CITY.

No. 31676.   Nov. 14, 1944.

154 P. 2d 960.

Paul G. Darrough, of Oklahoma City, for plaintiffs in error.

A. L. Jeffrey, Municipal Counselor, and Leon Shipp, Asst. Municipal Counselor, both of Oklahoma City, for de-defendant in error.

BAYLESS, J. John A. Bush et al. appeal from a judgment of the district court of Oklahoma county, adverse to them and in favor of the city of Oklahoma City, a corporation. The trial below involved issues arising out of condemnation proceedings initiated by the city for the purpose of acquiring, among other properties, certain property of the plaintiffs for a city water supply purpose; and the precise issue here involves the necessity for the taking of a certain part of the land owned by plaintiffs.

In their brief the plaintiffs present four propositions, one involving the correctness of the trial court's ruling with respect to the burden of proof; the second raising the question of whether the judgment is supported by the evidence, and two others being statements of principles of law applicable to condemnation proceedings. The city undertook to answer these by stating three propositions. In the first, the city contends that the plaintiffs had waived the right to present any issue respecting the necessity for taking; in the second, they take issue with plaintiffs' argument relating to who has the burden of proof; and in the third, the city contends that the evidence amply supports the judgment.

From the view we take of the case it is not necessary to pass on the question of estoppel.

We think it sufficient to say with respect to who has the burden of proof that in the case of Delfield v. City of Tulsa, 91 Okla. 541, 131 P. 2d 754, we held that while nominally the burden of proof upon the affirmative of the issue of the necessity for the taking rests upon the condemnor, this burden is discharged and a prima facie case is made by the condemnor when it has introduced in evidence its proceedings initiating the condemnation proceedings, including the resolution of necessity, whereupon the burden to proceed with the evidence shifts to the condemnee. We see no occasion to undertake a reconsideration of this rule, for it seems to comport generally with the other authorities. In this particular case, the plaintiffs, the condemnees, voluntarily assumed the burden of proof and only undertook to save their record by appearing to contend otherwise when the trial court in commenting upon their initiative assumed that they did so because of the rule in the Delfield Case. At this point it is necessary to notice an argument made by plaintiffs attacking the sufficiency of the resolution of necessity adopted by the city. As noted, the resolution of necessity, if sufficient in law and fact,

establishes the prima facie case, and of course, if it is inadequate in these respects, it cannot support a prima facie case. It is admitted that the resolution is sufficient for the land actually to be covered by water and for the 660 feet adjacent thereto, but it is insisted that 11 O. S. 1941 §293 (ch. 204, S. L. 1923) contains two grants of the power to condemn. One covers the land actually to be inundated, plus the protective belt of 660 feet; the other covers land deemed to be necessary in addition to the foregoing. Plaintiffs say that the resolution adopted, as shown in this record, fairly covers the first type of land needed and authorized to be taken, but urge that if more is desired and deemed needed, a special resolution setting out this necessity is required. We observe in the separate portions of section 293, supra, set out by plaintiffs, the requirement that each type of taking shall be by resolution, and in each reference is made to the adoption of a resolution. However, we do not see that separate and distinct resolutions are explicitly required. A single resolution could cover both, and equally as well, two resolutions could be adopted. There is nothing in the language of City of Tulsa v. Williams, 100 Okla. 116, 227 P. 876, or Rowell v. City of Lawton, 143 Okla. 203, 288 P. 344, or G.R.D.A. v. Thompson, 189 Okla. 89, 113 P. 2d 218, to sustain this particular argument. The resolution under consideration says, in the most general and yet comprehensive terms, that land is necessary for

" . . . the purpose of constructing thereon a water reservoir and all necessary and incidental structures to make the same usable as and for an additional water supply for the city of Oklahoma City, Oklahoma. . . . "

It then contains in another part the descriptions of the several tracts of land to be acquired and makes no effort to differentiate the specific purpose for which any is needed. We think this is sufficient. We hold that this contention is without merit.

We come now to the question of whether the evidence supports the judgment rendered. The plaintiffs owned the southeast quarter section. The principal differences between the parties arise over what is the maximum high water line. If this line is placed at 1,199 feet above sea level and the 660 feet from this contour line is taken for purposes of protection, the contour line thus established will leave in the southeast portion of the quarter section an irregularly shaped tract of about 21 acres in area. If the maximum high water line is placed at 1,205 feet above sea level with the protective belt of 660 feet added to that, a contour line will be established which leaves in the same area of the southeast quarter section an irregularly shaped tract of land about four acres in area. It is plaintiff's contention that the record discloses that the mean high water line is 1,199 feet, and that no necessity exists for the taking of the 21 acres. The city contends that the maximum high water line is 1,205 feet, and while the four acres above mentioned lies outside the contour line thus established, that on occasions this four acres will be affected by spray from the high waves on the lake; and it is a proper exercise of the discretion vested in the city to elect to take this four acres which will be so affected by the water. City presents an argument that sets this situation in reverse. It insists that a nuisance would thus exist with respect to this four acres and the owners could force the taking thereof or recover damages if city had not taken same.

The plaintiffs introduced in evidence maps and other instruments purporting to depict the situation, and introduced as a witness an engineer who did a great deal of the surveying and other preliminary work in the laying out and locating the reservoir. This engineer testified that in preparing to serve as a witness he went to the city planning engineer and obtained from him information as to where the maximum high water line was, and this information was to the effect that it was set at 1,199 feet. From this, this witness then estimated how much of the land was

necessary to be taken, and came to the conclusion and testified that it was not necessary to take the 21 acres mentioned by the plaintiffs. On its part the city introduced instruments comparable to those of the plaintiffs and introduced the testimony of the planning engineer aforementioned. This engineer placed the maximum high water line at 1,205 feet and was examined and cross-examined at length and in great detail in support of this item of testimony. In their brief and reply brief the plaintiffs have gone at great length to point out what they say are inconsistencies that are destructive of the probative value of his testimony. We have considered the evidence of these witnesses and are unable to agree with the plaintiffs in their estimate of the effect of this engineer's testimony as a whole. In addition to questioning the correctness of his testimony, they endeavor to draw a comparison between the reasonableness of the maximum high water line established by the testimony of their engineer and that of the city's planning engineer. We observe that while the city engineer did not deny having stated to the plaintiffs' engineer that the maximum high water line was 1,199 feet, we also observe that the date on which this information was obtained was not given. Both sides have pointed out that changes were made in the projected location of the reservoir and this might account for the discrepancies with respect to this line. The plaintiffs' witness stated that he simply took the figures given him and did not question them. This witness testified that he was not criticizing the maximum high water line established by the city planning engineer nor the height of the dam or spray wall; and said that had he been in the city engineer's place he would have used as great a safety factor in that respect as possible. We think the planning engineer's testimony that 1,205 was the line must be taken as a contradiction of plaintiffs' witness. We have detailed this testimony at some length in an effort to disclose what the trial court had before him when he rendered judgment. This is an issue of fact, and we are of the opinion that there is evidence to sustain the judgment rendered by the trial court that it was necessary to take all of the plaintiffs' land, including the four acres.

In reaching the conclusion we have upon the issues heretofore discussed, we have constantly had in mind the contentions of plaintiffs that in condemnation proceedings all presumptions are resolved in favor of the landowner, and that the procedure for condemnation outlined by our law is to be strictly construed in favor of the landowner. These rules do not require, however, that condemnation law be so rigidly construed and applied as to deprive a condemnor, as in this case, of some reasonable discretion in the determination of what is necessary for its public purpose.

The judgment is affirmed.

CORN, C. J., GIBSON, V.C.J., and RILEY, HURST, and ARNOLD, JJ., concur.