OKLAHOMA CITY, a Municipal Corporation, Plaintiff in Error,

v.

Charles A. SHADID, Farris Shanbour, Seymour Lesowitz, Beverly R. Lesowitz et al., Defendants in Error.

No. 40974.

Supreme Court of Oklahoma.

Oct. 4, 1966.

Rehearing Denied Dec. 27, 1966.

Certiorari Denied May 8, 1967.

See 87 S.Ct. 1486.

Roy H. Semtner, Municipal Counselor, Robert D. Epperson, Asst. Municipal Counselor, Charles E. Halley, Asst. Municipal Counselor, for plaintiff in error.

Charles Hill Johns, Oklahoma City, of Counsel: Smith, Johns & Neuffer, Oklahoma City, for defendants in error.

PER CURIAM.

This is an appeal by the City of Oklahoma City, hereinafter referred to as the

City, from a judgment of the District Court of Oklahoma County, rendered in a condemnation proceeding, sustaining the exceptions to the report of the Commissioners made in the proceedings, and pleas of denial of jurisdiction filed by the property owners, defendants in error, hereinafter referred to as defendants, and decreeing all proceedings to be void and dismissing the same. While the exceptions to the report of the commissioners to pleas to and the denials to jurisdiction set forth several distinct grounds, the sole questions tried and determined in the Court below seem to have been whether or not a public necessity exists for the taking of the land, and whether or not the land is being taken for a public use. The trial court held that the land was not being taken for a public use; and that no public necessity for the taking of the land existed. Therefore, the primary question to be determined in this appeal, is whether or not the land involved is being taken for a legally authorized public use.

The land involved is East of Portland Avenue and adjacent to Will Rogers Airport. It is located within an area designated "Aviation Related and Development Area" in the so-called "Master Plan" of the airport. The City contends that the taking of these tracts is necessary for the proper expansion, development, operation and management of Will Rogers Airport. The defendants, on the other hand, contend that no airport necessity exists, and that the land is being taken for private purposes and for the benefit of private industry, rather than for public use.

Before the condemnation proceedings were instituted, a resolution declaring the necessity for acquiring the land was passed and properly approved by the proper city officials. This resolution was introduced in evidence. The reception into evidence of this resolution of necessity established prima facie a case of public necessity and the burden shifted to defendants to show such taking was not for a public use. In Delfeld v. City of Tulsa, 191 Okl. 541, 131 P.2d 754, 143 A.L.R. 1032, we said:

"When, as is the case here, a municipal corporation is vested with the right of eminent domain, and in the exercise of such right begins proceedings to take the land by formally declaring the necessity for which it takes, and the use for which the proposed taking is to be made, the necessity of taking is determined, inasmuch as the legislature, having granted this power to the municipality, has settled the question of necessity or expediency. This leaves only the question of whether the taking is for a proper public use. Other considerations are open to attack by other means, but are not a proper subject of consideration in the condemnation proceedings. The defendant could not properly raise the issue that the city intended to acquire this land for some other purpose. All he had a right to contest in the condemnation proceeding was whether the use to which the property was to be put was a public use.

"When the city, by resolution, declared the necessity for condemning this land, for a declared purpose it established a prima facie case of necessity, and the burden then shifted to the defendant to show that such taking was not for a public use."

See also Bush v. Oklahoma City, 194 Okl. 504, 154 P.2d 960.

In White v. City of Pawhuska, 130 Okl. 156, 265 P. 1059, this Court held:

"The word 'necessity' in connection with condemnation proceedings does not mean an absolute, but only a reasonable, necessity such as would combine the greatest benefit to the public with the least inconvenience and expense to the condemning party and property owner consistent with such benefit."

Ralph M. Ball, an engineer and member of a firm of engineers who were aviation consultants to the City and who had prepared the Master Plan for Will Rogers Airport for the City, in part testified in substance: That the intended use of the area shown on the Master Plan as Aviation Related & Development Area was for airport

use and development. That it was intended to use the property for the development of airport facilities or facilities that were allied to the airport. That the presence of airport facilities helps support the airport because you couldn't have the airport without facilities to support it. That all airport operations are lessee operations, and upon being asked his opinion as a consulting engineer for the City, whether or not the property involved in the lawsuit was necessary for the operation of the airport and its expansion, he answered: "It's definitely needed by the City as a protection from sound and encroachment." The witness also stated: "The primary reason they need it is because they will need to protect themselves from suits and harassments from people that claim losses and abuses from sound, and to properly develop the airport."

In our opinion, the record wholly fails to show any fraud, bad faith or abuse of discretion on the part of the City in attempting to take the lands involved.

Defendants urge that exceptions to report of commissioners and plea to jurisdiction of the Court is the proper procedure to present the legal question of the right of plaintiff to maintain the proceeding in eminent domain and argue that plaintiff possessed no right to acquire by eminent domain or condemnation proceedings, the property of defendants, because the evidence showed the City was not seeking the lands for any necessary public use, but for private use and purpose, and cite in support of this contention, Kansas City v. Hyde, 196 Mo. 498, 96 S.W. 201, 203, 7 L.R.A.,N.S., 639 and City of Richmond v. Carneal, 129 Va. 388, 106 S.E. 403, 14 A.L.R. 1341.

In the Hyde case, the property owner contended that the condemnation proceeding was a proceeding to take his property not for a public, but for a private use and the judgment of the lower court was reversed because it had failed to hear certain evidence offered by the property owner upon this issue. In the City of Richmond case, the question involved was the constitutionality of a Virginia Statute authorizing cities in street opening proceedings to acquire land in excess of their need and to replat, sell and dispose of the excess. We do not regard either of these cases as controlling in the case at bar. The constitutionality of any statute is not involved herein, and the record does not sustain the proposition that Oklahoma City is trying to condemn land in these proceedings for a private purpose.

Without becoming involved in a philosophical analysis of the complexities and complications of modern existence, many things are now reasonably necessary for the establishment, maintenance and operation of a modern, up-to-date, municipal airport. The need of land use, for noise control, elimination of safety hazards, for industrial sites for subsidiary suppliers, repair shops and industrial activities closely related and dependent upon the normal activities of a modern municipal airport, may be reasonably said to be all a part of and a factor to be considered in the proper development, construction, management and operation of a modern municipal airport and such need is a public need, and further, the acquisition of land for such use, or the use of the same to satisfy such need, we think, can be reasonably said to be a public use thereof.

We think the testimony of W. J. Karpenko, Federal Aviation Agency, District Airport Engineer, and of William O. Coleman, Airport Superintendent shows that land uses for repairing and manufacturing for aeronautical use, if it involved use of the runways of the airport, including basing of aircraft that would eventually use runways, or repair of aircraft that would be flown in or out of the airport, for any purpose like agricultural, advertising, student training, and executive travel would be for airport purposes and legitimate airport uses, eligible for federal aid. We, likewise, conclude that in the instant case the taking of the land involved for such land uses would be for a public use. The power to lease land acquired for airport purposes to

private concerns for servicing aircraft, accommodating air travelers and furnishing goods, supplies and commodities directly related to airport operations is conferred by the Municipal Airports Act of 1947, and the exercise of such power, in our opinion, would not convert the public purpose or land use into a private purpose or use. See Duff v. City and County of Denver, 147 Colo. 123, 362 P.2d 1049, and cases cited therein.

The right to acquire by eminent domain proceedings, land, buildings and facilities for airports has been clearly given by the Legislature of Oklahoma to municipalities. Title 3, O.S.1961, Sec. 61, provides:

"Every municipal corporation within this State shall have the right and power to acquire, own, operate, improve and maintain, within or without the corporate limits of such municipal corporation, real estate, buildings, improvements and facilities for aviation airports and rights of way therefor. For such purposes every municipal corporation shall have the power to exercise the right of eminent domain within or without the corporate limits of such municipal corporation. For any and all of such purposes in order to carry out the same they shall have the power and authority to issue and sell bonds under and by virtue of the Constitution of this State, bearing interest not to exceed six (6%) per cent per annum, maturing within twenty-five (25) years, and issued in the manner and form provided by law."

The Municipal Airports Act, being Title 3 O.S.1961, Sections 65.1–65.20, authorizes the present condemnation proceeding. Section 65.2, sub-division (a), reads:

"Every municipality is authorized, out of any appropriations or other moneys made available for such purpose, to plan, establish, develop, construct, enlarge, improve, maintain, equip, operate, regulate, protect and police airports and air navigation facilities, either within or without the territorial limits of such municipalty and within or without the territorial boundaries of this State, including the construction, installation, equipment, maintenance and operation at such airports of buildings and other facilities for the servicing of aircraft or for the comfort and accommodation of air travelers, and the purchase and sale of supplies, goods and commodities as an incident to the operation of its airport properties. For such purposes the municipality may use any available property that it may now or hereafter own or control and may, by purchase, gift, devise, lease, eminent domain proceedings or otherwise, acquire property, real or personal, or any interest therein including easements in airport hazards or land outside the boundaries of an airport or airport site as are necessary to permit safe and efficient operation of the airport or to permit the removal, elimination, obstruction-marking or obstruction-lighting of airport hazards or to prevent the establishment of airport hazards."

And, Section 65.5, specifically authorizes the cities to enter into lease agreements.

The defendants also contend that the City was not seeking to acquire the lands involved for any necessary public use, but for private use and purpose. As we have heretofore stated, we think the defendants have failed to overcome plaintiff's prima facie case of public necessity and public use, and that the evidence taken as a whole shows that a public necessity did exist, and that the property of defendants was being taken for public purpose and use and not for private use or purpose.

The defendants, also contend as follows: " * * * A municipality delegated the right of eminent domain holds such right as a public trust. Should any municipality of the State of Oklahoma attempt to exercise the power of eminent domain under such delegated power from the State of Oklahoma, and such municipality should wrongfully and illegally attempt to condemn private property under representations of necessity for public use, when in truth and in fact such mu-

**194**

nicipality knew and was possessed of positive facts that it was not necessary for such municipality to have and acquire such property for any public use whatsoever, such concealment of facts by such municipality would constitute a gigantic and colossal fraud upon the landowners whose property was sought to be acquired, and a gigantic and colossal fraud upon the courts of our State, inasmuch as such municipality has a fiduciary duty to make a complete and full disclosure of all of the facts in a condemnation proceeding in eminent domain to the landowners and to the courts of our State."

We have already determined that this property was being taken for a public use and the contention of defendants is based upon the erroneous assumption that the property was being taken for a private use. However, condemnation proceedings constitute "adversary proceedings" as that term is usually employed (see People v. Superior Court of Los Angeles County, Calif., 47 Cal.App.2d 393, 118 P.2d 47, 120 P.2d 655) whether the proceedings are or are not contested, and we find no authority sustaining the proposition that a municipality, as condemnor, owes a greater duty to its condemnee, than does any other condemnor to its condemnee.

In Lansden v. Bear, Fall & Coon Creek Water & Soil Con. Dist. #4., Okl., 370 P.2d 540, we held:

"In condemnation cases, while the particular property sought to be condemned must be necessary for the proposed project, the condemnor's decision as to the necessity for taking the particular property will not be disturbed in absence of fraud, bad faith, or abuse of discretion".

In City of Tulsa v. Williamson, Okl., 276 P.2d 209, we stated:

" * * * that while the question whether a use is a public use is ultimately a question for judicial determination, where the legislative judgment has been declared as to whether a given use is a public use, that judgment will not be overturned by the courts, unless it is clearly apparent that the same is without reasonable foundation."

There is an entire absence of fraud, bad faith or abuse of discretion on the part of plaintiff and after plaintiff established a prima facie case of necessity, defendants failed to sustain the burden that such taking was not for a public purpose, and the trial court's order decreeing the proceedings to be void and dismissing the same, was contrary to law and the evidence.

The trial court's order dismissing the proceedings is reversed with directions to vacate the same and proceed in said cause.

Reversed with directions.

The Court acknowledges the services of John L. Goode, who with the aid and counsel of Richard Steed and Harris Van-Wagner, as Special Masters, prepared a preliminary advisory opinion. These attorneys had been recommended by the Oklahoma Bar Association and appointed by the Court. The Chief Justice then assigned the case to Justice Pat IRWIN, for review and study, after which and upon consideration by the Court, the foregoing opinion was adopted.