ROCKWELL INTERNATIONAL CORPO-
RATION, a Delaware corporation; Tul-
sair Beechcraft, Inc., an Oklahoma cor-
poration; Butler Aviation, an Okla-
homa corporation and Reading &
Bates, a Delaware corporation, Plain-
tiffs–Appellees,

v.

Cheryl CLAY, in her capacity as County
Assessor of Tulsa County, Oklahoma;
William Pigman and Susan Harris, in
their capacity as members of the Tulsa
County Board of Equalization, Defen-
dants–Appellants,

and

Dependent School District No. 16 and
Independent School District No. 1,
Intervenors–Appellants.

No. 66412.

Supreme Court of Oklahoma.

July 11, 1989.

Rehearing Denied Sept. 27, 1989.

David L. Moss, Dist. Atty., Tulsa County,
Susan K. Morgan, Doris Fransein, Asst.
Dist. Atty., Tulsa, for defendants-appel-
lants.

J. Anthony Miller, Studenny and Associ-
ates, Tulsa, for plaintiffs-appellees.

Graydon Dean Luthey, Jr., Stephen W.
Ray, Messrs. Jones, Givens, Gotcher, Doyle
and Bogan, Tulsa, for plaintiff-appellee
Terminal Drive Corp.

J. Douglas Mann, Jerry A. Richardson,
Messrs. Rosenstein, Fist and Ringold, Tul-
sa, for intervenors-appellants School Dis-
tricts.

OPALA, Vice Chief Justice.

The Tulsa County Assessor and Equalization Board appeal from the trial court's ruling that a private leasehold interest in tax-exempt property may not be assessed for ad valorem levy. Two issues are presented for review: (1) May a private leasehold estate in tax-exempt city-owned property be taxed ad valorem to the lessee? and (2) May appellee's [Terminal Drive's] leasehold interest be exempt from ad valorem tax as property acquired by a municipality for airport purposes pursuant to the provisions of 3 O.S.1981 § 65.17? [1] We answer the first question in the negative and the second in the affirmative.

## THE ANATOMY OF LITIGATION

The City of Tulsa [City] holds the fee simple title to all the leased real property in this litigation (located at two Tulsa-area airports). At the *Tulsa International Airport* the City leases land to the Tulsa Airports Improvement Trust [Trust], an entity created pursuant to the provisions of 60 O.S.1981 § 176. Rockwell International Corp., Tulsair Beechcraft, Inc., Butler Aviation, Terminal Drive Corp. [Terminal Drive],[2] Cities Service and Reading & Bates [collectively called lessees], sublease that land from the Trust. The other leaseholds in contest here are located at the *Richard Lloyd Jones Jr. Airport.* The Tulsa Airport Authority, a charter-authorized agency of the City, operates and maintains the "Jones" airport. The City has leased portions of the Jones airport property directly

to Tulsa Piper, Inc. and Kenneth Warren [lessees].

The private leasehold interests were assessed in 1984 for ad valorem tax. The lessee-tenants, who initially protested unsuccessfully before the Tulsa County Board of Equalization [Board], later appealed to the district court in a number of actions which were consolidated for trial. Two local school districts were allowed to join as defendants; twenty-six lessee-tenants of the "Jones" airport property intervened "as plaintiffs" pursuant to leave of court.[3]

The district court's summary judgment went to the lessees. It declared that for ad valorem purposes a private party's leasehold estate is not a separate interest in land and that property owned by a municipality is exempt from that levy. Terminal Drive's leasehold interest also was declared exempt as property acquired by a municipality for airport purposes pursuant to the provisions of 3 O.S.1981 § 65.17.[4]

The Tulsa County Assessor and members of the Tulsa Board of Equalization [collectively called "County"] bring this appeal from the trial court's judgment.

## I

## LEASEHOLD INTERESTS MAY NOT BE TAXED AD VALOREM SEPARATELY FROM THE FEE ESTATE

The County argues a private leasehold from a tax-exempt entity is a separate legal estate that must be taxed to the lessee. We reject this notion as contrary to

---

1. See *infra* note 8 for the pertinent provisions of 3 O.S.1981 § 65.17.

2. On January 10, 1989 Terminal Drive moved in this court for a party substitution order because Family Development Corporation had acquired Terminal Drive's underlying sublease. Family Development Corporation is hence ordered substituted for Terminal Drive as a party to this appeal.

3. It is neither asserted nor shown by the record that any leases in this controversy contain an executory option to purchase. The stipulations entered into below clearly indicate that the tax assessment in contest was levied against the "possessory interest" in the leased airport property. Twenty-six lessees were allowed to inter-

vene as persons similarly situated with the two lessee-plaintiffs of the "Jones" airport property. The intervenors' leases are not incorporated within the appellate record. We assume for the purpose of our holding that the parties plaintiff, as well as the intervenors, are bona fide lessees, *none* of whom holds an executory option to purchase. The effect of the latter interest on ad valorem assessment was dealt with in *State ex rel. Cartwright v. Dunbar,* Okl., 618 P.2d 900, 904 [1980], and *General Motors v. Okl. Cty. Bd. of Equal.,* Okl., 678 P.2d 233, 235 [1983].

4. See *infra* note 8 for the pertinent provisions of 3 O.S.1981 § 65.17.

law. Applying the authority and rationale of our recent pronouncement in *Oklahoma Industries Authority et al. v. Joe B. Barnes, County Treasurer of Oklahoma County et al.,*[5] we hold today that leasehold interests in real property may not be taxed ad valorem separately from the fee estate. There is no implicit provision in Oklahoma's fundamental law that permits a leasehold to be taxed apart from the fee or which subjects a private leasehold in nontaxable land to the burden of ad valorem levy.[6]

Under the taxing scheme presently in force the leasehold interests in the city-owned airport properties are clearly exempt from ad valorem exaction.

## II

### TERMINAL DRIVE'S LEASEHOLD INTEREST IN PROPERTY ACQUIRED BY A MUNICIPALITY FOR AIRPORT PURPOSES IS EXEMPT FROM AD VALOREM TAX BY THE PROVISIONS OF 3 O.S.1981 § 65.17

■ The Municipal Airports Act of 1947[7] [Act] recognizes the authority of a city to acquire, operate and maintain an airport. Section 65.17[8] of this Act expressly exempts from taxation municipal property acquired for airport purposes. An ex-

planation of "airport purposes" is set out in 3 O.S.1981 § 65.2(a).[9] Among other things, § 65.2 permits an airport trust authority to construct, maintain, operate and regulate airports for the comfort and accommodation of air travelers.

The central focus of Terminal Drive's argument is that the leased property was acquired from the City by the Trust *for an airport purpose.* According to the provisions of the lease agreement, the Trust was to build a hotel on the premises. The hotel presently situated there operates as a commercial business over which neither the City nor the Trust has any direct control.

The hotel building is only 1,760 feet away from the airport. Its accommodations—primarily used by air travelers who take advantage of the terminal's proximity and by passengers who are stranded during traffic disruptions and delays caused by inclement weather—though not *stricto sensu* absolutely essential, afford a reasonable and necessary service facility for a growing number of airline customers. We hence conclude that the tax-exempt property in which Terminal Drive holds a leasehold interest clearly was acquired by the City *for an airport-related purpose* and pronounce it exempt from ad valorem tax under the provisions of § 65.17.[10]

The trial court's judgment is affirmed.

---

5. Okl., 769 P.2d 115 [1989].

6. *Oklahoma Industries Authority v. Barnes, supra* note 5 at 118.

7. 3 O.S.1981 §§ 65.1 et seq.

8. The terms of 3 O.S.1981 § 65.17 provide:
   "*Any property* in this state *acquired by a municipality for airport purposes* pursuant to the provisions of this Act, and any income derived by such municipality from the ownership, operation or control thereof, *shall be exempt from taxation* to the same extent as other property used for public purposes." [Emphasis added.]

9. The terms of 3 O.S.1981 § 65.2(a) provide:
   "*Every municipality is authorized,* out of any appropriations or other monies made available for such purpose, *to* plan, establish, develop, *construct,* enlarge, improve, *maintain,* equip, *operate, regulate,* protect and police *airports* and air navigation facilities, ..., *including the construction,* installation, equipment, *maintenance* and *operation at such air-*

*ports of buildings and other facilities* for the servicing of aircraft or *for the comfort and accommodation of air travelers ....*" [Emphasis added.]
   In *Oklahoma City v. Shadid,* Okl., 439 P.2d 190, 192–193 [1966], the court applied § 65.2 to determine what constitutes a public purpose for eminent domain proceedings. We there recognized that a variety of facilities may reasonably be necessary for the establishment, maintenance and operation of a modern, up-to-date municipal airport.

10. In *Appeals of County of Allegheny,* 425 Pa. 578, 229 A.2d 890, 891 [1967], the court recognized the importance of a hotel facility as an adjunct to the municipal air terminal and held that because its accommodations were reasonably necessary for the airport's efficient operation, the hotel premises stood exempt from ad valorem tax by a provision of Pennsylvania's Constitution. In dicta the court explained that the hotel would not be tax exempt if it were run as a purely private business enterprise not able to meet the requisite public-use criteria.

HARGRAVE, C.J., and LAVENDER and SUMMERS, JJ., concur.

KAUGER, J., concurs by reason of stare decisis.

HODGES, SIMMS, DOOLIN and ALMA WILSON, JJ., dissent.