Cleo W. RUEB and Barbara Jean Rueb,
Plaintiffs in Error,

v.

OKLAHOMA CITY, a municipal corporation,
Defendant in Error.

No. 41153.

Supreme Court of Oklahoma.

Nov. 14, 1967.

Berry & Berry, Oklahoma City, for plaintiffs in error.

Roy H. Semtner, Robert D. Epperson, Charles E. Halley, Oklahoma City, for defendant in error.

PER CURIAM.

The City of Oklahoma City, Oklahoma, seeks in this action to condemn land owned by the defendants for expansion of the Wiley Post Airport.

By a pleading so designated, the defendants excepted and objected to the Report of Commissioners. A hearing was commenced before the trial judge and evidence received on the issue of the public necessity of the condemnation. The trial court overruled the defendants' motion to vacate the Report of Commissioners without prejudice to the defendants' right to a jury trial on the question of damages. From this judgment the defendants appeal upon the single issue that the evidence shows no necessity for the taking of their land.

The only evidence presented by the City was its Resolution of Necessity. However, it is well settled that the introduction of a Resolution of Necessity by a condemning authority establishes a prima facie case of necessity whereupon the burden to pro-

ceed with the evidence shifts to the condemnee. Bush v. Oklahoma City, 194 Okl. 504, 154 P.2d 960; Delfeld v. City of Tulsa, 191 Okl. 541, 131 P.2d 754; City of Oklahoma v. Shadid.

The property of the defendants that the City seeks to condemn, contains approximately five acres. It is located south of the present and proposed runways and south of the other facilities of the Wiley Post Airport, and is bisected by 50th street, which is a through municipal street.

The City proposes to construct an additional runway parallel to the present runway. The City contends that the defendants' property, which lies south of these runways, is needed to eliminate a traffic hazard. The evidence shows that this is the only necessity for the defendants' property and that no buildings, hangars, runways or other physical structures will be constructed on the defendants' property.

A small portion of the defendants' property is located within an area necessary for a clearance for the existing runway. A larger portion of the property lies within an area necessary for a clearance for the proposed runway. Also, there is a small portion of the defendants' property along the western edge that is located outside both clearance zones. There was no testimony as to the footage in these areas.

The defendants did not argue or submit any evidence to the trial court that the area designated for the proposed clear zone and the area outside the clear zones could be divided in kind or that the two areas should be considered separately. In view of the fact that the defendants considered their property as one tract and not separately in the trial below, we shall only consider those arguments that are applicable to the tract as a whole.

The defendants concede that the area designated as the present clear zone for the now existing runway may justify the taking of that portion of the defendants' property lying within that area. But they argue that as to the remainder of the defendants' property there is no necessity for the tak-

ing and that a future hope for need of the property is not sufficient to justify condemnation.

██ A future hope based on speculation is not sufficient to justify the taking of private property in a condemnation proceeding. But a condemning authority may consider those demands which may be fairly anticipated in the future. 26 Am.Jur., Eminent Domain, § 116. The reasoning behind this rule is particularly pertinent in the case of acquisition of lands for airport purposes. It is common knowledge that expanding airports have often resulted in the creation of nuisances and, in some extreme instances, a reverse condemnation.

In Carlor Co. v. City of Miami, Fla., 62 So.2d 897, an attempt was made to collaterally attack a judgment in an eminent domain proceeding which allowed the City of Miami to condemn land for port and airport purposes. The court held that it was not necessary that the condemning authority have money on hand, plans and specifications prepared and all other preparations necessary for immediate construction. The court also said:

"* * * It is the duty of public officials to look to the future and plan for the future. In erecting public buildings and public improvements, it is likewise the duty of public officials to build and plan not only for the present but for the foreseeable future. * * * City officials would have been derelict in the performance of their duties and they planned only for the necessities of ten years ago without any consideration for the necessities of the future. * * * The hands of public officials should not be tied to the immediate necessities of the present but they should be permitted, within reasonable limitations, to contemplate and plan for the future."

By adoption of the Municipal Airport Act of 1947, 3 O.S. 65.1 et seq., the Legislature saw fit to grant to municipalities the right to acquire property by eminent domain proceedings for airport purposes. Municipalities were delegated the authority

to plan, acquire, establish, operate and maintain airports and air navigation facilities, including the acquisition, removal, or elimination of airport hazards within or outside the boundaries of the airport site. (3 O.S. 65.2 [a]) The acquisition of land for these purposes was declared to be public and governmental functions, exercised for a public purpose, and matters of public necessity. (3 O.S. 65.16)

██ In exercise of its statutory authority, the City has declared a need for an additional runway which necessitates a taking of the defendants' property. The City has made application with F.A.A. for funds to construct the proposed runway. Mr. William O. Coleman, Director of Airports for the City, testified that no work has been begun or contracts let for the construction of the proposed runway, but that construction was predicated on when the airfield would qualify by certain aircraft movements. The City by its Resolution has in effect declared that due to the present demands and projections of aircraft traffic in the future, the proposed runway is justified and that there is now an immediate need for the City to acquire and own the property of the defendants. The defendants did not produce any evidence to show that the necessity for the proposed runway could not be fairly anticipated in the future. It was incumbent upon the defendants to submit evidence that the present demands and the anticipated aircraft traffic in the future at the Wiley Post Airport did not justify the implementation of the City's plans for expansion by condemnation. In City of Oklahoma City v. Shadid, supra, we quoted with approval the following:

"In condemnation cases, while the particular property sought to be condemned must be necessary for the proposed project, the condemnor's decision as to the necessity for taking the particular property will not be disturbed in absence of fraud, bad faith, or abuse of discretion".

██ We have examined the entire record and find that the judgment of the trial

court is not against the clear weight of the evidence and find no evidence of fraud, bad faith or abuse of discretion by the condemning authority.

Judgment affirmed.

This Court acknowledges the services of JAYNE N. MONTGOMERY who with the aid and counsel of GEORGE BINGAMAN and HENRY H. MONTGOMERY, as Special Masters, prepared a preliminary advisory opinion. These attorneys have been recommended by the Oklahoma Bar Association and appointed by the Court. The Chief Justice then assigned the case to HODGES, J., for review and study, after which and upon consideration by the Court, the foregoing opinion was adopted.

All Justices concur.