FILED
United States Court of Appeals
Tenth Circuit

October 17, 2013

Elisabeth A. Shumaker
Clerk of Court

**UNITED STATES COURT OF APPEALS**

**TENTH CIRCUIT**

BISON PIPELINE, LLC,

       Plaintiff - Appellant,

v.

102.84 ACRES OF LAND, MORE OR
LESS, LOCATED IN CAMPBELL
COUNTY, STATE OF WYOMING;
BARLOW RANCH, LIMITED
PARTNERSHIP, a Wyoming corporation,

       Defendants - Appellees.

_____

INTERSTATE NATURAL GAS
ASSOCIATION OF AMERICA; THE
WYOMING
STOCK GROWERS ASSOCIATION;
PROGRESSIVE PATHWAYS, LLC,

       Amicus Curiae.

No. 11-8052
(D.C. No. 2:10-CV-00089-NDF)
(D. Wyo.)

**ORDER AND JUDGMENT**[*]

Before **O'BRIEN**, **EBEL**, and **TYMKOVICH**, Circuit Judges.

_____

      [*] This order and judgment is not binding precedent, except under the doctrines of law of the case, res judicata, and collateral estoppel. It may be cited, however, for its persuasive value consistent with Fed. R. App. P. 32.1 and 10th Cir. R. 32.1.

This appeal arises out of an easement-condemnation suit between Plaintiff-Appellant Bison Pipeline, LLC ("Bison") and Defendant-Appellee Barlow Ranch, LP ("Barlow"). Since Bison first filed this appeal, the issues have evolved substantially. Initially, the parties agreed that while the suit arose under the Natural Gas Act, 15 U.S.C. § 717 et seq., Wyoming eminent-domain law prescribed the measure of "just compensation" for the easements, and so the parties focused their arguments on the proper construction of Wyoming's eminent-domain statutes, and more specifically, on whether the district court erred when it ruled that Wyoming law allowed the jury to (1) measure just compensation for the easements at issue by examining prices paid for similar easements (instead of by applying the "before-and-after" valuation method, which measures compensation by netting the entire property's fair market value before and after the taking of the easements); and (2) award Barlow annual payments and impose an inflation-adjusted escalator.

After oral argument, however, the Wyoming Supreme Court addressed these issues head-on when it decided Barlow Ranch, LP v. Greencore Pipeline Co., 301 P.3d 75 (Wyo. 2013). Bison agrees that Greencore resolved the issues above in Barlow's favor. Nevertheless, Bison argues that Greencore does not compel affirmance because, inter alia, Wyoming law, as applied by the jury and affirmed by the Wyoming Supreme Court in Greencore, frustrates the purposes of the Natural Gas Act; and Greencore did not resolve all of the evidentiary issues Bison advanced. We disagree. Exercising

2

jurisdiction under 28 U.S.C. § 1291, we GRANT Bison's unopposed motion to correct the record and AFFIRM.

## BACKGROUND

Defendant-Appellee Barlow owns the Barlow Ranch, which contains a forty-two acre oil and gas development area called the Dead Horse Hub. Pursuant to its authority under the Natural Gas Act, 15 U.S.C. § 717f, the Federal Energy Regulatory Commission ("FERC") awarded Bison the right to construct a pipeline across the Barlow Ranch in order to connect to the Dead Horse Hub. Acknowledging Bison's condemnation rights under the statute, Barlow granted Bison (1) a meter station easement; (2) a pipeline easement; and (3) access rights over certain roads on Barlow Ranch (collectively, the "Easements"). However, the parties could not agree on an appropriate amount of compensation for the Easements, and so Bison brought suit in the United States District Court for the District of Wyoming to resolve that issue. See 15 U.S.C. § 717f(h) (establishing that such disputes are to be resolved "in the district court of the United States for the district in which such property may be located," and that the "practice and procedure in any action or proceeding for that purpose . . . shall conform as nearly as may be with the practice and procedure in similar action or proceeding in the courts of the State where the property is situated").

3

The parties agreed that the amount of "just compensation" would be determined according to Wyoming's eminent-domain statutes. The district court rejected Bison's argument that, in Wyoming, just compensation must be measured using the "before-and-after" valuation method; i.e., by netting the entire property's value immediately before and after a partial taking. In reaching that conclusion, the court reasoned that Wyo. Stat. Ann. § 1-26-704(a)(iii)(A)-(C), adopted in 2007 by the Wyoming Legislature, "specifically provides for the use of prices and values paid for comparable easements or leases in determining fair market value." Aplt. App. at 965. The court admonished, however, that such "comparable transactions" are not admissible as evidence unless they represent "[s]ituations where the buyer is not obligated to buy and engages in a fairly negotiated arm's length transaction for the property." Id. at 969.

Barlow offered into evidence twenty-one purportedly comparable contracts between Barlow and other companies for developments at the Dead Horse Hub, as well as six other purportedly comparable contracts between neighboring landowners and pipeline companies. These agreements typically called for an initial payment to the landowner, followed by annual payments and Consumer Price Index ("CPI") adjustments to account for inflation. On Bison's motion, the district court struck six of the agreements between Barlow and others as the product of a settlement following litigation, but it admitted the remainder. The court also admitted Bison's evidence that (1) under a before-and-after valuation of the Easements, the amount of just compensation would be

4

$2,660, and (2) prior to litigation, Bison offered Barlow $126,530.81 for the Easements, which Bison claimed was commensurate with what it paid neighboring landowners.

After a three-day trial, the jury returned an award for Barlow comprised of an initial payment of $41,220, followed by annual payments of $9,165, adjusted for inflation according to a CPI. After the district court denied Bison's Rule 59(e) Motion for Amended Judgment or Remittur, or Alternatively, for a New Trial, Bison timely appealed, arguing that (1) Wyoming law required that "just compensation" be determined under the "before-and-after" method; (2) Wyoming law prohibited the jury from awarding annual payments adjusted for inflation according to a CPI; (3) the district court abused its discretion on several evidentiary matters; and (4) district court's interpretation of Wyoming law would make awards for just compensation so disproportionate to actual land values as to frustrate the purposes of the Natural Gas Act and to violate the Fifth Amendment of the U.S. Constitution.

Then, after oral argument in this case, the Wyoming Supreme Court resolved several of those issues when it decided Barlow Ranch, LP v. Greencore Pipeline Co., 301 P.3d 75 (Wyo. 2013). First, the court held that when the Wyoming Legislature amended Wyoming's eminent-domain statutes in 2007, it "chose to allow the price paid for 'comparable easements' to be considered in the determination of fair market value." Id. at 90 (discussing Wyo. Stat. Ann. § 1-26-704). Like the district court in this case, the Wyoming Supreme Court interpreted Wyoming law to require that such "comparable easements" evidence "be based upon arms' length transactions between willing buyers

5

and willing sellers." Id. at 94 (holding that compelled transactions resulting in payment of a higher-than-market price are not arm's-length, but "[a]bsent any showing to the contrary, there is a presumption that the sale was an 'arm's-length' transaction and not under compulsion" (internal quotation marks omitted)); see also Wyo. Stat. Ann. § 1-26-704(a)(i), (iii). Additionally, Greencore held that an award for just compensation in the context of partial takings for pipeline easements could include annual payments adjusted for inflation according to a CPI. Id. at 103-04.

We granted the parties leave to file supplemental briefing to clarify the state of this appeal after Greencore. Bison acknowledges that "Greencore reject[ed] most of Bison's earlier arguments concerning the valuation of partial takings under Wyoming law," and that (1) "Wyoming law does not require a before-and-after valuation in partial takings cases," (2) Wyoming statute "permits a landowner to use other pipeline contracts to prove the value of the property taken," and (3) "Wyoming law permits a jury to award annual payments and impose a Consumer Price Index escalator in partial takings cases." Aplt. Supp. Br. at 1-2. Nevertheless, Bison insists that Greencore does not compel affirmance because (1) Greencore brought "into even sharper focus," id. at 3, Bison's argument that Wyoming eminent domain law (as it is reflected in the jury's verdict in this case) is so oppressive to pipeline companies that it violates the Fifth Amendment of the U.S. Constitution and so frustrates federal law that it triggers federal preemption; and (2) Barlow's failures of proof at trial and other evidentiary errors warrant a new trial in any event. We reject both of these claims.

6

**DISCUSSION**

**I.** **Bison's argument that Wyoming law is so oppressive to pipeline company condemnors as to violate the Fifth Amendment of the U.S. Constitution and to frustrate the purposes of the Natural Gas Act**

**A. Bison's Fifth Amendment argument**

For the first time on appeal, Bison argues that the amount the jury awarded Barlow as "just compensation" violates the Fifth Amendment. This court is willing to exercise its discretion to hear issues not raised below "only in the most unusual circumstances." United States v. Jarvis, 499 F.3d 1196, 1201 (10th Cir. 2007) (citing as one example "where the argument involves a pure matter of law and the proper resolution of the issue is certain"). In its Rule 59(e) Motion for Amended Judgment or Remittur, or Alternatively, for a New Trial, Bison briefed extensively its argument, addressed infra, that the jury's award so frustrates the purposes of the Natural Gas Act as to trigger federal preemption. We see no good reason—and Bison offers none—for Bison's failure to raise its related Fifth Amendment argument at that same time in order to give the district court an opportunity to pass on it. Thus, we adhere in this case to our general rule that "a litigant's failure to raise an argument before the district court . . . results in forfeiture on appeal," id., and we decline to address Bison's Fifth Amendment argument.

**B. Bison's argument that Wyoming law so frustrates the purposes of the Natural Gas Act as to warrant federal preemption**

Although Bison now argues that federal common law prescribes the "before-and-after" test as the measure of just compensation in all eminent-domain proceedings under

7

the Natural Gas Act, the parties agreed below that Wyoming eminent-domain law governed the measure of just compensation in this dispute, and the case was submitted to the jury on that theory. For the purposes of this appeal, therefore, we assume that the law of the state where the subject property is located can prescribe the measure of just compensation in an eminent-domain proceeding under the Natural Gas Act, and we turn to address Bison's argument that the application of Wyoming law in this case so frustrated the purposes of the Natural Gas Act that principles of federal preemption mandate a new trial applying federal common law.

"Where a state statute conflicts with, or frustrates, federal law, the former must give way." CSX Transp., Inc. v. Easterwood, 507 U.S. 658, 663 (1993). "The [Natural Gas] Act declares its purpose as furthering the public interest 'in matters relating to the transportation of natural gas and the sale thereof in interstate and foreign commerce.'" Columbia Gas Transmission Corp. v. Exclusive Natural Gas Storage Easement, 962 F.2d 1192, 1198 (6th Cir. 1992) (quoting 15 U.S.C. § 717(a)).

As a general matter, we agree with the Sixth Circuit that

[t]he only conceivable effect that adopting state law as the measure of compensation might have on [the Natural Gas Act's] purpose would be that condemnors proceeding under the Act might be required to pay more or less than under an alternative federal common-law rule. To the extent that compensation under state law might deviate from that under a federal rule, we believe this variance, in the aggregate, is far too speculative to warrant displacing state law. Furthermore, even if it could be shown that state law might result, on average and over time, in consistently greater or lesser awards, we seriously doubt that the amount would rise to the level of frustrating the specific objectives of the Natural Gas Act.

8

Id. Nothing about the application of Wyoming law in this case gives us cause for immediate concern. Indeed, Bison's arguments about the application of Wyoming eminent-domain law frustrating the purposes of the Natural Gas Act are mostly speculative. For example, Bison worries that the contract-based "comparables" admitted by the district court will "set the floor for any negotiations that follow, [meaning that] each landowner may demand successively higher prices as companies try to keep on schedule and avoid litigation, with land costs spiraling out of control and bearing scant resemblance to actual land values." Aplt. Br. at 61. However, ordering a new trial in this case, on that basis, would be both premature and inappropriate. The facts here do not reflect that Bison was made to pay more than a market rate for the Easements. To the contrary, the district court excluded Barlow's evidence of six agreements it concluded were not the product of arm's-length transactions. And while one of Bison's witnesses suggested that "payments based on Barlow's contract-income approach make projects like [this one] economically unfeasible if spread across the entire route," id., the many private agreements between Barlow and other producers at the Dead Horse Hub suggest a flourishing market at comparable rates.

In a different case with different facts—for example, where the record contains evidence of collusion or price-ratcheting rendering the acquisition of easements out of reach for companies with FERC papers in hand—our holding today may ultimately have to give way. But on this record, those concerns are too far off to entertain. Instead, this record reflects that the price Bison is being made to pay is the same price other pipeline

companies have agreed at arm's length is fair under the circumstances. And because we see nothing intrinsically frustrating to the purposes of the Natural Gas Act about a state law that measures just compensation by comparison to comparable arm's-length transactions, we reject Bison's federal-preemption argument.

## II.  Bison's arguments regarding evidentiary issues

Bison claims that several of its arguments relating to the district court's evidentiary rulings remain viable after Greencore. We review evidentiary rulings for abuse of discretion "[i]n deference to a district court's familiarity with the details of the case and its greater experience in evidentiary matters." Sprint/United Mgmt. Co., v. Mendelsohn, 552 U.S. 379, 384 (2008).

### A.  Bison's arguments that the district court committed reversible error in admitting Barlow's contract evidence

Bison advances several arguments in support of its claim that the district court committed reversible error in admitting Barlow's comparable-contract evidence. First, Bison argues that the comparable-contract evidence Barlow introduced was not "freely executed by willing buyers, because the other pipeline companies needed to acquire easements on the specified pipeline routes, or they entered into contracts to avoid or resolve litigation." Aplt. Br. at 31. However, the "fact that property is purchased by one vested with the power of eminent domain does not preclude admission of evidence regarding the sale, provided the transaction was fair." Greencore, 301 P.3d at 94; id. at 96 (rejecting also the proposition that "all subsequent transactions between parties who

10

were previously involved in a condemnation action are likewise disqualified as comparable transactions"). And "[a]bsent any showing to the contrary, there is a presumption that the sale was an 'arm's-length' transaction and not under compulsion." Id. (internal quotation marks omitted). After careful review of the record, we conclude that the district court did not abuse its discretion when it ruled that the comparable contracts admitted represented arm's-length transactions.

Second, Bison argues that five of the admitted "third-party" contracts—those between neighboring landowners and pipeline companies—lacked foundation, and that they should not have been considered by the jury as comparable-contract evidence. However, Mr. Barlow testified that he personally read those contracts and remembered their terms, which influenced him during his own negotiations with energy companies. Thus, the contracts were properly admitted as evidence of Mr. Barlow's state of mind, and we see no reason that the jury could not also consider them as comparable-contract evidence. See Ely v. Kirk, 707 P.2d 706, 712 (Wyo. 1985) (stating that under Wyoming law, "the opinion of an owner of property as to value is proper" if the owner's knowledge is "gained as an incident of ownership, e.g., purchase price of it or similar property" (emphasis added)).

Finally, Bison argues in its supplemental brief that "Barlow made no attempt to make any adjustments to the other-contract prices on which it relied to prove the value of Bison's partial taking," and that "[t]he district court's failure to require Barlow to prove necessary adjustments (or that none are necessary) for all its other easements and leases is

11

contrary to Greencore." Aplt. Supp. Br. at 6-7. However, Bison "neither points out, nor have we found, where this issue was raised before the district court. Therefore, the issue is not properly before this court and we will not address it." In re Am. Ready Mix, Inc., 14 F.3d 1497, 1502 (10th Cir. 1994).

In sum, the district court did not abuse its discretion in allowing Barlow to submit its comparable-contract evidence.

### B. Bison's argument that the district court abused its discretion when it excluded the testimony of Bison's experts

"[T]he 'touchstone' of admissibility [of expert testimony] is helpfulness to the trier of fact." Werth v. Makita Elec. Works, Ltd., 950 F.2d 643, 648 (10th Cir. 1991). In practice, that means that expert testimony must "be sufficiently tied to the facts of the case that it will aid the jury in resolving a factual dispute." United States v.Garcia, 635 F.3d 472, 476 (10th Cir. 2011).

After the district court indicated that it would allow Barlow to introduce comparable-contract evidence of just compensation, Bison attempted to introduce testimony from proffered experts Paula Rueter and John Widdoss to refute Bison's claim that the contracts were the product of arm's-length transactions. Rueter was set to testify that "every project she [had] worked on paid a premium to landowners above . . . fair market value of the property interest taken," and therefore that "pipeline companies pay premiums above fair market value." Aplt. App. at 934. However, the district court excluded Rueter's testimony altogether, concluding that

12

what happens with pipeline easements generally is not helpful to the jury and would ask the jury to speculate that all of the pipeline easements [Barlow] offered into evidence are above fair market value. Additionally, while Ms. Rueter is an experienced landman, there is nothing to suggest that she is a qualified appraiser or what other information she has relied on in her statement that pipeline companies generally pay above the fair market value of the property. There is no description of how she has determined the fair market value of those properties, whether she relied on reports of others or she made some determination of the value herself. This is just one of the problems with the vague, general testimony of Ms. Rueter.

Id. at 1432. The district court did not abuse its discretion in excluding Rueter's testimony on that basis. See Hollander v. Sandoz Pharms. Corp., 289 F.3d 1193, 1204 (10th Cir. 2002) (requiring for reversal "a definite and firm conviction that the lower court made a clear error or judgment or exceeded the bounds of permissible choice in the circumstances" (internal quotation marks omitted)).

We also find no abuse of the district court's discretion in its decision to exclude a brief portion of the testimony of Widdoss, Bison's expert appraiser. During trial and in front of the jury, the district court asked Widdoss a series of questions about his appraisal methodology. The exchange culminated with the court asking Widdoss, "None of the leases in the entire state of Wyoming for pipeline easements [represent market rates]?" to which Widdoss responded, "That's correct, none of them, not a single one." Aplt. App. at 3617-18.

Out of the presence of the jury the court opined that "[t]he conclusion and opinion that there are no arms-length agreements in not only Wyoming, but no other western state, seems to be a circumvention of [the court's ruling at the preliminary hearing

13

regarding admissible evidence] through testimony by an expert." Id. at 3637. The following day, the court instructed the jury to disregard Widdoss's response that "he did not calculate market rents for the pipeline or the roadway easement or the meter site agreement, because he did not believe that there were any agreements in Wyoming or in other nearby states that represented market or arms-length transactions." Id. at 3711.

Bison argues that the court's instruction "strongly signaled to the jury that Widdoss' opinions of value could not have been legally accepted," and that "[t]he effect was to negate the probative value of his direct testimony as well," thus "effectively buil[ding] a protective wall around Barlow's pipeline contracts, insulating the evidence from challenge." Aplt. Br. at 48-49. We disagree. The district court's conclusion that Widdoss's excluded testimony was inconsistent with Wyoming law is consistent with the Wyoming Supreme Court's decision in Greencore, see 301 P.3d at 94-95. And Widdoss was allowed to testify that Barlow's contract-income evidence did not reflect arm's-length transactions, and that Bison could not "walk away from the table," resulting in a "one-sided, non-market situation." Aplt. Br. at 14.

In sum, we find no abuse of the district court's discretion in its decision to exclude the expert testimony discussed above.

### C. Remaining evidentiary issues

14

After careful consideration of Bison's remaining evidentiary arguments, we conclude that they too lack merit.[1]

## CONCLUSION

For all of the foregoing reasons, we AFFIRM.[2]

ENTERED FOR THE COURT

David M. Ebel
Circuit Judge

---

[1] We also reject Bison's argument that, based on all of these errors, the district court abused its discretion when it denied Bison's Rule 59(e) Motion for Amended Judgment or Remittur, or Alternatively, for a New Trial.

[2] Bison Pipeline, LLC's motion to Correct the Record and Motion for Leave to Submit Hyperlinked Briefs are denied as moot.