OSCN Found Document:NATURAL GAS PIPELINE CO. v. FOSTER OK RESOURCES LP

 

 
 

 
 NATURAL GAS PIPELINE CO. v. FOSTER OK RESOURCES LP
2020 OK 29
Case Number: 118185
Decided: 05/05/2020
THE SUPREME COURT OF THE STATE OF OKLAHOMA
Cite as: 2020 OK 29, __ P.3d __

 
NOTICE: THIS OPINION HAS NOT BEEN RELEASED FOR PUBLICATION. UNTIL RELEASED, IT IS SUBJECT TO REVISION OR WITHDRAWAL. 

NATURAL GAS PIPELINE COMPANY OF AMERICA LLC, Plaintiff/Appellee,
v.
FOSTER OK RESOURCES LP, Defendant/Appellant.

ON APPEAL FROM THE DISTRICT COURT OF BRYAN COUNTY

The Honorable Mark R. Campbell, Trial Judge

Â¶0 Natural Gas Pipeline Company of America LLC filed a condemnation action against Foster OK Resources LP seeking permanent and temporary easements to operate and maintain two interstate natural gas pipelines that cross Foster's property. The district court appointed three Commissioners who filed a report as to the just compensation owed to Foster due to the pipeline company's taking. Foster filed exceptions to the report, contending the pipeline company's exercise of eminent domain in seeking the easements was not proper and did not meet the legal standard of necessity. The district court overruled Foster's exceptions, and Foster appealed. The Court retained the appeal.

DISTRICT COURT'S ORDER AFFIRMED.

James R. Waldo, James R. Waldo, P.L.L.C., Oklahoma City, Oklahoma, for Defendant/Appellant Foster OK Resources LP.

David W. Kelly, David W. Kelley, Inc., Durant, Oklahoma, for Defendant/Appellant Foster OK Resources LP.

John D. Dale, Barbara M. Moschovidis, and Ryan A. Pittman, GableGotwals, Tulsa, Oklahoma, for Plaintiff/Appellee Natural Gas Pipeline Company of America LLC.

Heather H. Burrage, The Burrage Law Firm, Durant, Oklahoma, for Plaintiff/Appellee Natural Gas Pipeline Company of America LLC.

Winchester, J.

Â¶1 Plaintiff/Appellee Natural Gas Pipeline Company of America LLC (NGPL) operates two interstate natural gas pipelines that cross property owned by Defendant/Appellant Foster OK Resources LP (Foster). NGPL brought this condemnation action seeking four separate easements to have consistent access to operate and maintain the pipelines and to clear title issues involving the pipelines. Foster challenged NGPL's exercise of eminent domain and whether NGPL's taking met the legal standard of necessity.

Â¶2 The issues before the Court are (1) whether the existing easement agreements between NGPL and Foster prevent NGPL from seeking the easements requested in this case, (2) the necessity of the taking by NGPL, and (3) the necessity of surveying Foster's property in determining the amount of just compensation owed to Foster. For the reasons stated herein, we hold that NGPL cannot contract away its right of eminent domain and is not prevented from seeking the easements at issue to operate and maintain the pipelines. NGPL's condemnation of Foster's property was for public use and meets the legal standard of necessity. We further rule the issue of the necessity of a survey in computing just compensation owed to Foster is premature and cannot be determined at this time.

I. FACTS AND PROCEDURE

Â¶3 Foster owns a 1,330-acre ranch that borders the north shore of the Red River in Bryan County, Oklahoma. NGPL is a Federal Energy Regulatory Commission (FERC) interstate natural gas pipeline company under the Natural Gas Act, 15 U.S.C. Â§ 717a (2020). NGPL operates two interstate natural gas pipelines--AG #1 Pipeline and AG #2 Pipeline--that traverse Foster's property. NGPL operates the pipelines under Certificates of Public Convenience and Necessity issued by FERC.[1] The parties agree that NGPL possesses the right of eminent domain.

Â¶4 NGPL and its predecessor negotiated two 50-foot easements with Foster for AG #1 Pipeline in 1995 and AG #2 Pipeline in 1989 (Easement Agreements).[2] Foster and NGPL's predecessor also entered into a letter agreement in August 1996 granting NGPL's predecessor the right to install the Palisade System, an above-ground structural support and erosion control system, on an exposed segment of the AG #2 Pipeline near the north shore of the Red River. NGPL's predecessor compensated Foster for this project.

Â¶5 NGPL brought this condemnation action alleging the combination of constant erosion and necessary maintenance requires NGPL to have consistent and reliable access over Foster's property to properly maintain the pipelines at issue. NGPL further contends the Easement Agreements do not accurately reflect that Foster's property includes a portion of land underneath the Red River or provide notice to third parties of the Palisade System. Specifically, NGPL seeks the following four easements:

1. The "Red River Permanent Easement" spanning the width of the Red River;

2. The "Maintenance Work Temporary Workspace" adjacent and parallel to the existing easement for the AG #2 Pipeline;

3. The "Permanent Access Road Easement" granting NGPL a non-exclusive easement to use Foster's existing road to access the pipelines; and

4. The "Palisade Permanent Easement" involving the structural support system in the Red River.

Â¶6 The district court appointed three Commissioners to determine the just compensation owed to Foster due to NGPL's taking of the permanent and temporary easements. The Commissioners filed their Report, and Foster filed its Exceptions to the Report. The district court conducted a hearing and overruled Foster's exceptions; Foster appealed. The Court retained the appeal.

II. STANDARD OF REVIEW

Â¶7 Condemnation proceedings involve both factual determinations and legal rulings. The issue of whether a proposed taking is for a "public use" is a judicial question. McCrady v. W. Farmers Elec. Coop., 1958 OK 43, Â¶ 5, 323 P.2d 356, 359. "Whether it is necessary to take particular property for the economic and efficient accomplishment of a lawful public purpose is a question of fact to be determined from the attendant facts and circumstances developed by the evidence." Pub. Serv. Co. of Okla. v. Willis, 1997 OK 78, Â¶ 18, 941 P.2d 995, 1000. The Court will view a valid declaration of necessity by the appropriate body as conclusive in the absence of a showing of actual fraud, bad faith, or an abuse of discretion by the condemning authority. Rueb v. Okla. City, 1967 OK 233, Â¶ 12, 435 P.2d 139, 141. The Court will not disturb on appeal the findings of the district court on the issue of the necessity of the taking where there is evidence to support such findings. City of Tulsa v. Williams, 1924 OK 136, Â¶ 11, 227 P. 876, 878.

III. DISCUSSION

A. The Easement Agreements do not divest NGPL of its right to eminent domain.

Â¶8 Foster argues the current Easement Agreements between Foster and NGPL prevent NGPL from seeking the easements requested in this case. Foster specifically contends NGPL seeks to utilize eminent domain to circumvent the existing Easement Agreements and to grant NGPL permanent easements that conflict with and abrogate the protections negotiated by the parties in the Easement Agreements. The Court disagrees.

Â¶9 This Court in Burke v. Oklahoma City, 1960 OK 29, 350 P.2d 264, previously rejected a similar argument. The property owners in Burke argued that an agreement settling an earlier condemnation proceeding relating to the same property determined the issue of the necessity for taking in a subsequent condemnation proceeding. By such agreement, the defendants contended the condemnor was estopped to maintain the subsequent condemnation proceeding. Id. Â¶ 15, 350 P.2d at 267. In answering these contentions, the Court stated:

We conclude and hold that the right of eminent domain is inalienable, cannot be surrendered in whole or in part and cannot be contracted away and res adjudicata and estoppel do not constitute defenses to the causes of action set forth in the petition to condemn as filed by the City herein.

Id. Â¶ 20, 350 P.2d at 268.[3]

Â 

Â¶10 We apply Burke and hold NGPL cannot surrender, alienate, contract away, or waive its right of eminent domain. The parties are still operating under the Easement Agreements. And the temporary and permanent easements requested by NGPL in this matter are outside the scope of the Easement Agreements. Even if the parties contemplated similar rights in the existing Easement Agreements, the Agreements do not divest NGPL of its right to eminent domain.

Â 

B. NGPL's condemnation of Foster's property meets the legal standard of necessity.

Â¶11 Although NGPL has the right to condemn Foster's property, that determination does not end our analysis. Foster argues that NGPL's taking through the temporary and permanent easements does not meet the legal standard of necessity for public use.

Â¶12 NGPL claims no right of eminent domain under the Constitution or statutes of Oklahoma but relies solely upon the powers delegated to it under provisions of the Natural Gas Act, 15 U.S.C. Â§ 717f(h) (2020).[4] The Natural Gas Act declares that "the business of transporting and selling natural gas for ultimate distribution to the public is affected with a public interest." 15 U.S.C. Â§ 717a (2020); Parkes v. Natural Gas Pipe Line Co., 1952 OK 157, Â¶ 25, 249 P.2d 462, 466. It is the function of Congress to decide what type of taking is for public use and that the agency authorized to do the taking may do so to the full extent of its statutory authority. Parkes, 1952 OK 157, Â¶ 26, 249 P.2d at 467. This Court must defer to Congress's decision. Id. Under the Natural Gas Act, NGPL has the right of eminent domain to construct, operate, and maintain pipelines for the transportation of natural gas pipelines. 15 U.S.C. Â§ 717f(h). NGPL--operating under certificates of public convenience and necessity issued by FERC--exercised its right of eminent domain to operate and maintain AG #1 Pipeline and AG #2 Pipeline. Congress has decided this power of eminent domain is for public use.[5]

Â 

Â¶13 Under Oklahoma law, the Court will not disturb NGPL's decision as to the necessity for taking in the absence of fraud, bad faith, or an abuse of discretion. Willis, 1997 OK 78, Â¶ 14, 941 P.2d at 999; Rueb, 1967 OK 233, Â¶ 12, 435 P.2d at 141. The word "necessity" in connection with condemnation proceedings does not mean an absolute but only a reasonable necessity, such as would combine the greatest benefit to the public with the least inconvenience and expense to the condemning party and property owner. White v. Pawhuska, 1928 OK 136, Â¶ 9, 265 P. 1059, 1062.

Â 

Â¶14 The parties agree that the Red River Permanent Easement and the Palisade Permanent Easement requested by NGPL are simply to clear title issues. The Easement Agreement for AG #2 Pipeline fails to describe or include the portion of the lands owned by Foster under the Red River.[6] The Easement Agreement also does not include the Palisade System, and the parties' letter agreement executed in 1996 is not recorded in the county land records. We hold such easements are necessary to clear title issues, and NGPL's decision to take such property is not fraudulent, in bad faith, or an abuse of discretion.

Â¶15 NGPL requested the Maintenance Work Temporary Workspace for work performed to install additional support, recoat, and ensure the integrity of the AG #2 Pipeline.[7] A temporary workspace is no longer needed as NGPL completed the work. However, NGPL should compensate Foster for the use of the workspace. We hold the easement was necessary for the maintenance work performed, and NGPL's decision to take such property was not fraudulent, in bad faith, or an abuse of discretion.

Â¶16 The main inquiry, in this case, is whether NGPL's taking by the Permanent Access Road Easement meets the legal standard of necessity. In short, Foster contends that another means of access to the pipelines is available to NGPL and therefore, NGPL's taking is not necessary and amounts to fraud, bad faith, or an abuse of discretion. It is well settled in Oklahoma that where a condemnor has selected and designated a route for taking, the courts will not inquire into the matter to demand why some other route was not chosen. See e.g., Owens v. Okla. Tpk. Auth., 1954 OK 345, Â¶ 5, 283 P.2d 827, 830; Williams, 1924 OK 136, Â¶ 12, 227 P. at 879.

Â¶17 The Court applied this standard in Graham v. Tulsa, 1953 OK 204, 261 P.2d 893, wherein the city initiated condemnation proceedings to take privately owned property to extend a public street. The Court held that the taking did not discriminate against the property owner as to indicate that the City acted fraudulently, in bad faith, or abused its discretion even though the city took more property from the property owner than from the hospital. Id. Â¶ 6, 261 P.2d at 895.

Â¶18 In reaching its decision, the Graham Court cited to an Idaho Supreme Court case, Grangeville Highway District v. Ailshie, 290 P. 717 (Idaho 1930), where a plaintiff brought a condemnation action for a right of way for a state highway through the defendants' farm. The defendants denied the necessity for taking, alleging the highway which had been in use for over forty years was as convenient to the public as the proposed highway and its use would inflict less injury upon the defendants. The Idaho Supreme Court applied the same standard used in Oklahoma as to the necessity of taking and reasoned that the defendants cannot prevail merely by showing that there is other land in the immediate neighborhood available and equally useful. Id. at 720. Many other states have also held the fact that some other available route might suffice or may even be more desirable was not sufficient to show fraud, bad faith, or an abuse of discretion.[8]

Â 

Â¶19 NGPL has three options to access its pipelines that cross Foster's property: 1) use its right of way as set forth in the Easement Agreements, 2) use the adjacent landowner's private road to access its right of way, or 3) obtain permission from Foster to use its private road to access its right of way. NGPL uses the adjacent landowner's road to access its right of way only when it is not transporting equipment to inspect or maintain the pipelines, and NGPL cannot transport machinery on the existing rights of way due to the limited width and terrain. Currently, NGPL has no other means to haul equipment to the pipeline to inspect or maintain the pipelines except by obtaining consent to use Foster's private road.

Â 

Â¶20 Although this case does not involve an initial taking of Foster's property, we nevertheless follow Graham, Ailshie, and several other states and hold that NGPL's taking does not amount to fraud, bad faith, or an abuse of discretion merely because another means of access to the pipelines is available to NGPL. See also Hennen v. State ex rel. Att'y Gen. Short, 1928 OK 336, Â¶ 6, 267 P. 636, 637 (concluding the State could condemn additional property beyond that which the State initially designated as necessary).

Â¶21 Foster further contends that NGPL's taking is fraudulent, in bad faith, or an abuse of discretion because NGPL's negligence created the need for additional maintenance to the exposed segment of AG #2 Pipeline and the use of Foster's private road. The Department of Agriculture defined the Foster property as highly erodible, and the parties agree that erosion exists over the entire Foster property. When the parties entered into the Easements Agreements more than 24 years ago, NGPL could not have foreseen the extent of the erosion on Foster's property. Further, a portion of the AG #2 Pipeline located at the north bank of the Red River became exposed due to erosion in 1995. Foster voluntarily entered into an agreement with NGPL's predecessor to build the Palisade System to prevent erosion and protect the exposed pipeline. NGPL has accessed that segment of the AG #2 Pipeline for inspection and maintenance by using Foster's private road since NGPL installed the Palisade System. Both Foster and NGPL are aware of the history of erosion on Foster's property, and this Court cannot rule that solely the negligence of NGPL required additional maintenance on the pipeline.

Â¶22 In determining the necessity of NGPL's taking in this matter, the Court must look at the facts and circumstances developed by the evidence and the conditions at the time of the taking. Willis, 1997 OK 78, Â¶ 18, 941 P.2d at 1000; Okla. City v. Cooper, 1966 OK 10, Â¶ 27, 420 P.2d 508, 513. The evidence demonstrates that the right that NGPL is seeking is not included in the Easement Agreements and continuous erosion of the Foster property requires NGPL to have better access over Foster's property to maintain the pipelines. The evidence further shows NGPL must use Foster's private road to haul equipment to the pipeline. NGPL plans to use Foster's private road two to four times a year and will also be responsible for maintaining the road to restore any damage caused by its use of the road. NGPL could have attempted to condemn additional property owned by Foster to construct a road, which would be disruptive and burdensome. Instead, it is more reasonable for NGPL to use Foster's existing road. We hold NGPL's request for a permanent, nonexclusive easement over Foster's road is reasonably necessary, and Foster produced no evidence indicating that NGPL's taking was fraudulent, in bad faith, or an abuse of discretion.

C. The issue of the necessity of surveying Foster's property to compute just compensation owed to Foster is premature and cannot be determined at this time.

Â¶23 Foster argues the Report of Commissioners is inherently defective because a survey of the Foster property was not done and calls into question the Commissioners' process of determining damages. NGPL contends a survey was not necessary as NGPL's Amended Petition included detailed written descriptions and map images describing the land subject to the condemnation proceedings. NGPL further argues that the district court entrusted to the Commissioners' discretion whether to obtain a survey.

Â¶24 The issue of the necessity of NGPL's taking is currently before the Court and is not dependent upon whether the Commissioners relied on a survey in computing damages. Instead, the Commissioners were for their evaluation to assume NGPL had the right to condemn Foster's property. Under Oklahoma law, an objection to the report of the commissioners will raise the issue of the necessity of the taking, and only a demand for a jury trial will raise the issue of damages. State ex rel. Dep't of Transp. v. Perdue, 2008 OK 103, Â¶ 10, 204 P.3d 1279, 1283--84. Foster requested a jury trial on the issue of just compensation. However, the jury trial regarding just compensation has not occurred, and the record is devoid of any evidence that the Commissioners incorrectly calculated damages due to a lack of survey. The issue of whether NGPL adequately compensated Foster is premature. Similarly, based on the record before us, we hold the issue of the necessity of a survey to compute just compensation owed to Foster is premature and cannot be determined at this time.

IV. CONCLUSION

Â¶25 NGPL did not contract away its right of eminent domain by way of the Easement Agreements between NGPL and Foster. Further, the fact that NGPL has another means of access to its pipelines is insufficient to show that NGPL's taking was fraudulent, in bad faith, or an abuse of discretion. And we rule NGPL's condemnation of Foster's property was for public use and meets the legal standard of necessity. We also hold the issue of the necessity of surveying Foster's property in computing just compensation owed to Foster is premature and cannot be determined at this time. We, therefore, affirm the district court's ruling denying Foster's Exceptions to Report of Commissioners.

DISTRICT COURT'S ORDER AFFIRMED.

CONCUR: Gurich, C.J., Darby, V.C.J., Kauger, Winchester, Edmondson, Combs, Kane, and Rowe, JJ.

NOT PARTICIPATING: Colbert, J.

FOOTNOTES

[1] FERC issued a blanket certificate to NGPL on September 1, 1982, which states "[t]he construction, acquisition, and operation of facilities and the transportation and sale of natural gas are required by the public convenience and necessity." A blanket certificate allows its holder to engage in certain transactions, such as maintenance work, without seeking additional authorization from FERC. 18 C.F.R. Â§ 157.208(a) (2017). FERC further found the acquisition, conversion, operation, and transportation of natural gas through the AG #1 Pipeline was "in the public interest" and entered an order granting the associated certificate of public convenience and necessity on October 18, 1984. FERC also determined that the acquisition of the AG #2 Pipeline and the construction of minor tie-in facilities was "required by the public convenience and necessity" and issued the associated certificate on August 23, 2004.

[2] Each Easement Agreement provides NGPL with a strip of land within which it may construct, operate, and maintain the pipelines and provides that NGPL will maintain erosion control and stabilization where the pipeline crosses the Red River. The Easement Agreements require NGPL to maintain its rights of way and to bury the pipelines at least 36 inches below ground. They also require NGPL to obtain written permission to use Foster's private roads.

[3] We follow the majority of jurisdictional consensus, which all agree that the right of eminent domain cannot be contracted away. See e.g., W. River Bridge Co. v. Dix, 47 U.S. 507 (1848); Pub. Serv. Co. of Colo. v. Loveland, 245 P. 493 (Colo. 1926); S. Ind. Gas & Elec. Co. v. Boonville, 20 N.E.2d 648 (Ind. 1939); Herman v. Bd. of Park Comm'rs, 206 N.W. 35 (Iowa 1925); Tenn. Gas Transmission Co. v. Violet Trapping Co., 200 So.2d 428, 433 (La. Ct. App. 1967) (holding the condemnor may take additional land of the defendant for the construction of its new pipeline, irrespective of a prior agreement); Moberly v. Hogan, 298 S.W. 237 (Mo. 1927); Mobile & O. R. Co. v. Mayor of Union City, 194 S.W. 572 (Tenn. 1917); Muscoda Bridge Co. v. Worden-Allen Co., 219 N.W. 428 (Wis. 1928).

[4] 15 U.S.C. Â§ 717f(h) states:

(h) Right of eminent domain for construction of pipelines, etc.
When any holder of a certificate of public convenience and necessity cannot acquire by contract, or is unable to agree with the owner of property to the compensation to be paid for, the necessary right-of-way to construct, operate, and maintain a pipe line or pipe lines for the transportation of natural gas, and the necessary land or other property, in addition to right-of-way, for the location of compressor stations, pressure apparatus, or other stations or equipment necessary to the proper operation of such pipe line or pipe lines, it may acquire the same by the exercise of the right of eminent domain in the district court of the United States for the district in which such property may be located, or in the State courts. The practice and procedure in any action or proceeding for that purpose in the district court of the United States shall conform as nearly as may be with the practice and procedure in similar action or proceeding in the courts of the State where the property is situated: Provided, That the United States district courts shall only have jurisdiction of cases when the amount claimed by the owner of the property to be condemned exceeds $3,000.

[5] The right of eminent domain under 15 U.S.C. Â§ 717f(h) includes rights over roads to access pipeline easements. Bison Pipeline, LLC v. 102.84 Acres of Land, 560 F. App'x. 690, 693 (10th Cir. 2013). It also includes the right to obtain easements over land outside of the existing right of way. See Columbia Gas Transmission, LLC v. 1.01 Acres, 768 F.3d 300, 302-03, 305, 314 (3rd Cir. 2014) (holding the plain language of FERC's regulations allow certificate holders to replace lines outside of a preexisting right of way).

[6] Foster's property extends to the south bank of the Red River. Choctaw and Chickasaw Nations v. Seay, 235 F.2d 30, 36 n. 10 (10th Cir. 1956).

[7] The Easement Agreements granted temporary workspace access that terminated upon completion of pipeline construction.

[8] See e.g., Mo. Pac. R.R. Co. v. 55 Acres, 947 F. Supp. 1301, 1312 (E.D. Ark. 1996) (holding the court will not control the exercise of a railway company's discretion in locating its depots although the railway may own other suitable lands); Arco Pipeline Co. v. 3.60 Acres, 539 P.2d 64, 71 (Alaska 1975) (noting the heavy burden of proof to persuade the court to substitute its judgment for that of the condemnor); Catalina Foothills Unified Sch. Dist. No. 16 v. La Paloma Prop. Owners Ass'n, Inc., 363 P.3d 127, 132 (Ariz. Ct. App. 2015) (rejecting property owner's argument that the taking was improper because there were other adequate means of entry to the school's campus); Telford Lands, LLC v. Cain, 303 P.3d 1237, 1244 (Idaho 2013) (finding reasonable necessity for use of a pipeline although an alternative means of conveying water was available); Cnty. of Stearns v. Voller, 584 N.W.2d 800, 804 (Minn. Ct. App. 1998) (concluding court could not consider whether alternate routes existed when determining the issue of necessity); State ex rel. State Highway Comm'n v. Crossen-Niessen Co., 400 P.2d 283, 286 (Mont. 1965) (holding no abuse of discretion in selecting route even if another less expensive route exists).

Â