The CITY OF OKLAHOMA CITY, a Municipal Corporation, Plaintiff in Error,

v.

Charles H. GARNETT et al., Defendant in Error.

No. 37162.

Supreme Court of Oklahoma.

April 24, 1956.

A. L. Jeffrey, Municipal Counselor, Howard V. Cudd, Asst. Municipal Counselor, Oklahoma City, for plaintiff in error.

Robinson, Shipp, Robertson & Barnes, by Leon Shipp, Oklahoma City, for defendant in error.

CORN, Justice.

This is an action in condemnation brought by the City of Oklahoma City, hereinafter referred to as the City, against Charles H. Garnett, hereinafter referred to by name or as defendant or lessee, to condemn a school land lease designated as No. CS–1016 on public land of the State of Oklahoma located in Oklahoma County, Oklahoma,

"* * * together with the right to renew said lease and purchase the land in the event of its sale, and all of the benefits and rights arising from the said lease, including the possession and right of occupancy of said land, to-wit:

"Government Lots Two (2), Three (3), Four (4), Eight (8), Nine (9), and Twelve (12) of the Southeast Quarter (SE¼) of Section Thirty-six (36), Township Twelve (12) North, Range Three (3) West, containing 147.23 acres, more or less,"

for public park purposes and uses incidental thereto.

After the appraisal by commissioners, both sides filed written demand for a jury trial. Upon trial thereof judgment was for the defendant. The City has prosecuted an appeal, and has named eight assignments of error.

It is first objected that the trial court, upon a return by the commissioners in which they valued all the improvements except a water tower and tank, and three concrete feeding ramps, ordered them to file a supplemental report valuing the above items. Their report was in two parts, in one of which a valuation of $28,700 was made on

items other than the two mentioned, and the other was a letter addressed to the judge in which they said they considered the two items were not to be valued for reasons stated. Upon petition of the defendant they were ordered to return a supplemental report to their original in which they valued the items mentioned.

In this the court committed no error. It merely required them to file a completed report, which in their first partial report they erroneously conceived was not to be valued. They did not report it of no value, as shown by their supplemental report in which they valued it at $6,240. The original report and the supplemental report made one complete report covering the property they were directed to value in the first instance.

The City suffered no injury thereby, for both plaintiff and defendant demanded a jury and the damages were fixed by its verdict.

In Incorporated Town of Pittsburg v. Cochrane, 200 Okl. 497, 197 P.2d 287, 291, it was held:

"Defendant also urges that the valuation placed upon the property by the appraisers was excessive and arrived at by erroneous methods. Since defendant has requested a jury trial at which the value of the property will be determined by the jury, we deem it unnecessary to pass upon this question."

And in C. E. Owens v. Oklahoma Turnpike Authority, Okl., 283 P.2d 827, 831, it is held that:

"The rest of defendants' third proposition we regard as immaterial and moot. Since the Commissioners' award was superseded by the jury verdict, it is of no moment whether the court erred in appointing and instructing the new commissioners or not."

It is next objected by the City that the court erred in excluding the testimony of the witness Earl H. Houston, who served as a commissioner in the case. He was allowed to testify on direct examination and said that he valued the property at $34,340. He

had in fact valued it at $34,940 in the report of the Commissioners. On cross-examination he said he had not given a figure in writing in a greater amount than he testified as a witness. Thus he could not be cross-examined about the discrepancy in his testimony without disclosing to the jury the fact of the report of the commissioners, which would have been error. The court thereupon excluded his testimony and instructed the jury to disregard it.

The court was faced with the alternative of denying the defendant the right to cross-examine or of permitting him to introduce the return of the commissioners. In this situation he held that the witness had rendered himself incompetent and declined to permit further examination. We cannot say that in this he committed error, although we do not pass upon the question. This for the reason that he had another witness, Mr. H. J. Garrett, who was a commissioner and who testified to the same value as he reported as commissioner. The testimony excluded was merely cumulative.

Its other witness, Mr. Roscoe Sears, testified at length and to a lower valuation than did Mr. Houston. No other witness was offered by the plaintiff.

█ It is apparent that the testimony of this witness did not, in any wise, influence the jury and did not result in a miscarriage of justice, or constitute a substantial violation of a constitutional or statutory right so as to constitute reversible error. 22 O.S. 1951 § 1068; 12 O.S.1951 §§ 78, 636; Grooms v. Johnson, 192 Okl. 527, 138 P.2d 98; Byrd v. McKoy, 183 Okl. 209, 81 P.2d 315; Mid-Continent Petroleum Corporation v. Fisher, 183 Okl. 638, 84 P.2d 22.

In Kelly v. Oklahoma Turnpike Authority, Okl., 269 P.2d 359, 366, it is said:

"The admissibility of evidence of value in condemnation cases is more largely within the trial court's discretion than determination of other issues, so that error predicated upon the exclusion of certain evidence will not be sustained except in cases of manifest error."

It is next objected that the court erred in holding that the lessee was entitled to compensation for his improvements located on Grand Boulevard.

█ It appears that the defendant's lease covered all of the Southeast Quarter of Section 36. Grand Boulevard was determined to be a strip 200 feet wide extending north and south across the section, bisecting Lots 2 and 4. The lease, and all of the leases from the first in 1947, covered all of the quarter section, which was described by the lots. The proceedings to condemn described all of the lots by numbers, both in the resolution of the City Council, and in the petition, and in the notice to the defendant. When the land was first surveyed in 1873, the lots were meandered on the North Canadian River and given the lot numbers and their acreage fixed at 147.23. The remainder of the 160 acres was taken by the river. The commissioners of the land office followed the original description when they leased it. Evidently the City Council and the attorney for the City did not know of the existence of Grand Boulevard across the tract, and proceeded to condemn the entire leasehold. Having done so, it was proper to exclude Grand Boulevard from all consideration of the jury. It is settled law that the City, having filed condemnation of the entire leasehold, was bound by that fact and could not thereafter claim otherwise.

In Grand River Dam Authority v. Simpson, 192 Okl. 338, 136 P.2d 879, 881, it is said:

"And so it is concerning the estate or interest of the condemnee. The institution of the proceeding admits the ownership. The condemnor cannot claim the beneficial ownership of land and at the same time assert that the condemnee claims all or some part of that interest; the proceeding in condemnation cannot be employed as a means to quiet title; and the right to exercise the power of eminent domain is dependent entirely upon the ownership being in some one other than the condemnor; the power to condemn negatives ownership in the condemnor. 20 C.J. 958, 959, § 367; 29 C.J.S., Eminent Domain, § 260.

"The Authority could not maintain the proceedings against the Simpsons and at the same time assert the contract as a conveyance of the equitable title."

There was no error in excluding all reference to Grand Boulevard.

■ It is next urged that a preference right of a school land lessee to renew his lease from time to time as the existing lease expires is not a proper element of damages where a leasehold is taken in condemnation.

It will be noted that the City asked to condemn the absolute ownership and title to the lease "together with the right to renew said lease and purchase the land in event of its sale" in the resolution by the City Council, and the petition and notice to the defendant. The right to renew the lease or to purchase the land upon the sale thereof is a valuable right, and is so held in Nichols v. Oklahoma City, 195 Okl. 305, 157 P.2d 174, 175, wherein it is said:

"The damage is to the improvements placed thereon by the defendant and the value of the leases taken in the proceeding."

In Oklahoma Turnpike Authority v. Betremieux, 208 Okl. 171, 254 P.2d 771, 772, it is said:

"This contention cannot be sustained. We think there is sufficient competent evidence to sustain the verdict returned and as stated by the Turnpike Authority, if the amount awarded is reasonably supported by the testimony the verdict of the jury and the judgment based thereon will not be disturbed on appeal. Bush v. Oklahoma City, 194 Okl. 504, 154 P.2d 960; Grand River Dam Authority v. Rose, 195 Okl, 968, 161 P.2d 766; Denney v. State ex rel. King, 179 Okl. 35, 64 P.2d 298; Nichols v. Oklahoma City, 195 Okl. 305, 157 P.2d 174."

There was no error in this.

It is true that upon the expiration of a lease if the commissioners of the Land Office of the State of Oklahoma choose not to renew it, or to sell the land, the lessee has no remedy to compel them to do so, but the fact that the land is always for sale or lease renders the right to buy at the appraisal, or to re-lease a valuable one.

It is next objected that on condemnation of the lease it was error to admit evidence of the value of the land at the time of taking and the value of the lease covering this land.

In the first place, the evidence abundantly shows that only the lease was valued and the jury was not misled by the action of the court in holding that the value of a going concern was to be taken into account in fixing the value of the land taken and by asking the witness on cross-examination about the value of another leasehold even though dissimilar to the one at issue, the dissimilarity being pointed out by the witness at the time. The whole case was on the value of the lease, and it was evident to the jury that the court had reference to the lease instead of the land which it covered. It will be noted that the City condemned the lease "together with the right to renew said lease and to purchase the land in the event of its sale", and that both of its witnesses testified to its value.

■ The instructions of the court to the jury, both those asked by the plaintiff and those given by the court, are complained of. An examination of them shows that the issues were sufficiently covered by those given by the court and there is no defect in them. The City contends that the verdict of the jury for $65,000 is excessive.

Mr. Garnett testified that he had leased the tract of land involved from August 1, 1947, to the date the same was condemned by the City. That he used the same for the receipt of garbage and the feeding of hogs. That he purchased garbage from the City of Oklahoma City, paying them therefor $1,500 per month, and a percentage of the profits made. That he had between 3,000 and 4,000 hogs on the property for fattening purposes and sold and purchased hogs constantly for this purpose, running through the plant about three quarters of a million dollars worth of hogs per year. That he continued to operate in this manner until the City commenced a project for widening the river and voted bonds for that purpose. That there were 12 sets of improvements located

upon the leasehold estate together with the improvements made by him for feeding and taking care of the hogs. He testified as to the market value of each separate improvement, giving detailed description thereof, and as to the value of the preference right lease added to the improvements making a total of $118,622.50.

As to the value of the preference right lease and improvements, his testimony was corroborated by five other competent witnesses whose testimony as to the said value ranged from $73,000 to $110,000.

The verdict of the jury is amply supported by competent evidence.

Judgment affirmed.

JOHNSON, C. J., WILLIAMS, V. C. J., and DAVISON, HALLEY, BLACKBIRD, JACKSON and HUNT, JJ., concur.