FILED
United States Court of Appeals
Tenth Circuit

June 1, 2015

Elisabeth A. Shumaker
Clerk of Court

**UNITED STATES COURT OF APPEALS**

**FOR THE TENTH CIRCUIT**

STATE OF OKLAHOMA, ex rel.
DEPARTMENT OF
TRANSPORTATION,

       Plaintiff - Appellee,

v.

UNITED STATES OF AMERICA,
SMALL BUSINESS
ADMINISTRATION,

       Defendant - Appellee,

ARVEST BANK, a foreign corporation,

       Defendant - Appellant,

and

CROW REAL ESTATE
INVESTMENTS, LLC, a terminated
Oklahoma limited liability company;
CROW ENTERPRISES, LLC, an
Oklahoma limited liability company,
d/b/a Turnpike Chrysler Jeep Dodge;
COUNTY TREASURER OF OTTAWA
COUNTY, OKLAHOMA; SECURITY
BANK,

       Defendants.

No. 14-5100
(D.C. No. 4:09-CV-00452-TCK-TLW)
(N.D. Okla.)

**ORDER AND JUDGMENT**[*]

---

   [*] After examining the briefs and appellate record, this panel has determined unanimously to grant the parties' request for a decision on the briefs without oral

(continued)

Before **BRISCOE**, Chief Judge, **LUCERO** and **MATHESON**, Circuit Judges.

This appeal by Defendant-Appellant Arvest Bank (Arvest) involves a dispute over the priority rights to funds deposited in the district court as just compensation for a condemnation of real property by the Oklahoma Department of Transportation (ODOT). Arvest appeals the district court's ruling that it was not entitled to first priority in the deposited funds because it had released its lien on the property during the pendency of the condemnation proceedings. The district court had jurisdiction under 28 U.S.C. § 2410(a)(4) because the Small Business Administration (the SBA) held a mortgage on the condemned property. We have jurisdiction under 28 U.S.C. § 1291, and we affirm.

## I. **BACKGROUND**

### A. *Original Petition*

ODOT filed a petition in federal court to condemn 1.88 acres of a 5.16 acre parcel of land owned by Crow Real Estate Investments, LLC and Crow Enterprises, LLC (collectively, "Crow") for highway expansion. ODOT named as defendants Crow, which operated a car dealership on the property; Arvest, which then held a

first-priority mortgage lien on the property for $468,040.27; the SBA, which held second-priority lien on the property for $129,022.45; and the County Treasurer of Ottawa County, Oklahoma. *See Okla. ex rel. Dep't of Transp. v. Lamar Adver. of Okla., Inc.*, 335 P.3d 771, 775 (Okla. 2014) ("[P]roperty interests entitled to [condemnation] compensation include every valuable interest that can be enjoyed and recognized as property.").

In Oklahoma, "[c]ondemnation proceedings are begun by one party filing a petition in district court to appoint a commission made up of three disinterested landowners to determine the amount of just compensation." *Indep. Sch. Dist. No. 5 v. Taylor*, 324 P.3d 415, 420 (Okla. Civ. App. 2013) (internal quotation marks omitted). After inspecting and assessing the property, the commission files a report with the district court assessing the just compensation for the taking. *Id*. at 421; Okla. Stat. tit. 69, § 1203(c). The interested property holders then have a right to demand a jury trial on the issues of damages in a condemnation proceeding. *Taylor*, 324 P.3d at 421; Okla. Stat. tit. 69, § 1203(e). A jury verdict sets the final damage award and supersedes the commissioners' assessment of just compensation. *City of Okla. City v. Garnett*, 296 P.2d 766, 767 (Okla. 1956); Okla. Stat. tit. 69, § 1203(e). "[T]he 'date of taking' is established when the condemner pays the commissioners' award into court." *Okla. ex rel. Dep't of Transp. v. Post*, 125 P.3d 1183, 1188 (Okla. 2005).

## B. *Amended Complaint and Disbursement of Funds*

The court referred ODOT's condemnation proceeding to a magistrate judge, who appointed three commissioners to estimate the just compensation for the taking. Before the commissioners issued their report, ODOT amended its complaint to take the full 5.16 acres, based on Crow's representation that it would be physically and functionally impossible for it to operate a car dealership on the remaining acreage if ODOT only took 1.88 acres. The commissioners estimated the just compensation for the full 5.16 acre parcel at $1,856,506.42. In early March 2010, ODOT deposited that sum with the court. Crow, Arvest, the SBA, and ODOT each filed a timely demand for a jury trial on the issue of damages.

While the pre-trial proceedings were pending, Crow asked the court to disburse the funds on deposit. As no party objected, on March 29, 2010, the court ordered the deposited funds to be disbursed as follows: $1,259,443.70 to Crow, $468,040.27 to Arvest, and $129,022.45 to the SBA. The court's order made explicit, however, that "[n]either the deposit previously made, nor the disbursement ordered herein, shall constitute a waiver of any parties' right to demand a jury trial or right to contest the amount of just compensation for the subject property." Aplt. App. at 102.

In April 2010, Arvest released its mortgage lien on the Crow property in response to a letter from Crow's attorneys demanding it do so. SBA did not release its mortgage lien.

- 4 -

## C. *Second Amended Complaint and Return of Disbursed Funds*

In December 2010, ODOT filed a second amended complaint, reducing the amount of land being taken to the original 1.88 acres, having determined Crow could operate its dealership if ODOT acquired only 1.88 acres. The parties consented to the filing, and pursuant to court order the commissioners issued a second report valuing the 1.88 acre parcel at $592,766.00.

ODOT then moved for return of the excess disbursed funds, namely, the $1,263,740 difference between the commissioners' valuation of the 5.16 acre parcel and the 1.88 acre parcel. Crow, Arvest, and the SBA objected, arguing in part that any return was premature in light of the pending jury trial, which would make the final damage award. Arvest and the SBA also argued they should not be required to return the excess funds because their liens would not be fully satisfied by the $592,766.00 valuation. Arvest did not inform the court it had released its lien.

Following a hearing, the magistrate judge granted ODOT's motion in April 2012. He ruled there had been two distinct takings under Oklahoma law during the condemnation proceeding: (1) the taking of the 5.16 acre parcel, effective when the funds were deposited with the court, but which terminated when the parties consented to ODOT's second amended complaint, and (2) the taking of the 1.88 acre parcel, which was effective when the commissioners filed the second valuation report because ODOT had already paid the just compensation monies into the court. Because the parties had consented to ODOT reducing its condemnation to 1.88 acres, the magistrate judge concluded it would violate Oklahoma's constitution and

condemnation laws to allow Crow, Arvest and the SBA to retain use of the funds disbursed based on a condemnation of 5.16 acres.

On April 26, 2012, the magistrate judge ordered Crow, Arvest, and the SBA to return all of the disbursed funds so as to (1) repay directly to ODOT each parties' proportionate share of the $1,263,740 excess funds and (2) to re-deposit with the court all of the remaining $592,766 pending trial.[1] Stating, as it turns out incorrectly regarding Arvest, that neither Arvest or the SBA had released its lien, the magistrate judge required the remaining funds be re-deposited for later determination of the parties' relative priorities because the $592,766 valuation was likely to be insufficient to fully satisfy both liens. Aplt. App. at 282. Arvest appealed the magistrate judge's order to the district court, but still did not disclose it had released its lien. The district court affirmed the order. Arvest and the SBA returned their excess funds to ODOT and re-deposited the remaining funds with the court. Crow, however, never returned or re-deposited any of the funds it had received.

D. *Final Compensation Award and Disbursement of Funds*

In September 2012, ODOT informed the court a title search revealed Arvest had released its lien in April 2010, and Crow had encumbered the property to Security Bank. Thereafter, based on the parties' stipulation, the district court entered

---

[1] Thus, Crow was ordered to repay ODOT $857,314.52 and deposit $402,129.18 with the district court; Arvest was ordered to repay ODOT $318,599.17 and deposit $149,441.10 with the court; and the SBA was ordered to repay ODOT $87,826.73 and deposit $41,195.72 with the court.

an Agreed Partial Journal Entry of Judgment in December 2012, establishing a final just compensation award of $559,443.70 for the 1.88 acre parcel, granting ODOT a mortgage on Crow's entire property, and ruling disbursement of the funds on deposit would be determined by subsequent court order.

Arvest, ODOT, and the SBA each sought the full amount of the $190,636.81 on deposit with the court. ODOT argued it should receive all the money because Crow's failure to return the disbursed funds meant it had paid more than the just compensation for the 1.88 acres. The SBA asserted it had first priority on the funds because Arvest had released its lien. Arvest countered that it should be recognized as the equitable holder of a first priority lien, arguing it had been obligated by Okla. Stat. tit. 46, § 15(A) to release its lien when the money was disbursed, and would not have released its lien had it known ODOT would later amend its complaint.

The magistrate judge issued a report and recommendation (R&R) rejecting ODOT's argument, concluding ODOT's proper remedy was to maintain a suit against Crow to recover the excess monies. The magistrate judge concluded that Arvest's release of its mortgage lien eliminated its first priority status, and that the SBA was entitled to all the funds on deposit as the first priority lien holder. The district court adopted the R&R on July 28, 2014, and ordered all of the funds be paid to the SBA. Arvest appeals.

## II. DISCUSSION

### A. *Jurisdiction*

ODOT argues we lack jurisdiction over this appeal because the district court's July 28 order was not a final appealable order under § 1291. ODOT contends it is still entitled to an order from the district court granting it an additional money judgment against Crow for the unreturned disbursement. We disagree.

The December 2012 Agreed Partial Journal Entry of Judgment determined the amount of just compensation for ODOT's condemnation. The July 28, 2014 order determined the parties' priority rights to the funds on deposit and ordered those funds disbursed. As part of that determination, the July 28 order resolved ODOT's argument that it was entitled to the funds as reimbursement from Crow: it ruled that ODOT's only remedy to recover the excess funds from Crow was to maintain a separate action against Crow, citing *United States v. Featherston*, 325 F.2d 539, 541 (10th Cir. 1963) (holding that "[i]f the ultimate recovery is less than the amount deposited, the government can get the excess back from the clerk [of court] or, if it has been paid to the landowner, maintain a suit to recover it from him."). Because the July 28 order disposed of all of the claims and ended the condemnation proceedings, it was a final, appealable order. *See Riley v. Kennedy*, 553 U.S. 406, 419 (2008) (holding a final decision "ends the litigation on the merits and leaves nothing for the court to do but execute the judgment.") (internal quotation marks omitted).

- 8 -

B. *ODOT's Arguments Waived*

ODOT's arguments that it was entitled to the $190,636.81 or an order from the district court directing that Crow make payment to ODOT are not properly before this court. ODOT did not file a cross-appeal from the district court's decision and, thus, waived any challenge to the district court's order of disbursement. *See Trigalet v. Young*, 54 F.3d 645, 647 n.3 (10th Cir. 1995) (holding that court lacked jurisdiction to consider issue when party did not file a cross-appeal); *see also Mass. Mut. Life Ins. Co. v. Ludwig*, 426 U.S. 479, 480-81 (1976) (per curiam) (holding a party may not seek to enlarge its own rights or lessen the rights of its adversary absent a cross-appeal).

C. *Arvest's Arguments Regarding Distribution of Remaining Funds*

Arvest argues (1) it was entitled to the entire $190,636.81 because it was the first priority lienholder as of the date of the taking—when ODOT deposited funds into the court in March 2010 based on the first commissioners' award; (2) Oklahoma condemnation law does not provide for two commissioners' awards; and (3) the April 26, 2012 order requiring the parties to repay and re-deposit the funds disbursed in March 2010 should be reversed to avoid unjust enrichment to the SBA and ODOT. "[W]e review the district court's interpretation and determination of state law de novo." *Berry & Murphy, P.C. v. Carolina Cas. Ins. Co.*, 586 F.3d 803, 808 (10th Cir. 2009).

1. **First Lienholder Argument**

First, Arvest argues it was the first lienholder on the effective date of the taking—in March 2010—when ODOT paid into the court the amount of just compensation set by the first commissioners' report. It contends the later repayment of the disbursement monies cannot operate to change its priority rights as of the date of the taking. Arvest further asserts it was statutorily obligated to release the lien after the March 2010 disbursement under Okla. Stat. tit. 46, § 15(A), which states: "[a]ny mortgage on real estate shall be released by the holder of any such mortgage within fifty (50) days of the payment of the debt secured by the mortgage," subject to a penalty of up to $100 per day for failure to release the mortgage. *Id*. It argues the SBA should not be allowed to take priority over Arvest's lien by virtue of ignoring its own obligation under § 15(A) to release its lien.

Arvest's argument ignores relevant Oklahoma law. The commissioners' assessment of just compensation is just that – an assessment; it is superseded by any subsequent jury verdict, which sets the final damage award. *Garnett*, 296 P.2d at 767; *Indep. Sch. Dist. No. 5*, 324 P.3d at 422; Okla. Stat. tit. 69, § 1203(e)(1) ("[E]ither party may within sixty (60) days after the filing of [the commissioners'] report file with the clerk a written demand for a trial by jury, in which case the amount of damages shall be assessed by a jury."). Indeed, "where a demand is made for a jury trial in a condemnation proceeding, the award made by the commissioners is not competent evidence to go before the jury," *Taylor*, 324 P.3d at 422, and "[t]he Commissioners' award will no longer be relevant when superseded by the

jury's verdict," *Okla. ex rel. Dep't of Transp. v. Mehta*, 180 P.3d 1214, 1220 (Okla. Civ. App. 2008).

A party having an interest in the condemned property can immediately receive the preliminary award based on the commissioners' assessment, but it does so "subject to the right of either party to prosecute further proceedings concerning the sufficiency or insufficiency of the award." *Okla. ex rel. Dep't of Transp. v. Pendergraft*, 919 P.2d 451, 453 (Okla. 1996) (internal quotation marks omitted). The March 2010 order disbursing the funds stated the disbursement was not the final determination of just compensation and did not act as waiver of the parties' right to contest the amount of just compensation or to request a jury trial. Aplt. App. at 102.

Arvest cites no Oklahoma law stating it cannot lose its lien position even if it releases its lien before the final damage award. Oklahoma law suggests otherwise. The Oklahoma Supreme Court has ruled that "if a mortgagee opts to have the commissioners' preliminary award paid directly to him – rather than simply having his mortgage declared a lien on an award – then the mortgagee remains subject to . . . the right of the condemning authority to seek a judicial determination of the sufficiency or insufficiency of the award." *Pendergraft*, 919 P.2d at 453.

Further, as the district court ruled, a mortgagee can refuse to release a lien without penalty under § 15(A) when it has a good-faith belief there are substantial grounds for contesting that repayment has been made. *See Grissom v. Dye*, 269 P.2d 367, 370-71 (Okla. 1953) (holding there must be a clear showing of bad faith to seek a penalty under § 15(A)). Based on Oklahoma's statutory condemnation statutes and

case law holding that distribution of a preliminary award is not the final damage award and that a mortgage holder might be required to return any excess funds, Arvest had a good faith legal justification to assert it had no assurance it had received payment in full from Crow when it received the March 2010 distribution.

2. **Two Commissioners' Awards**

Arvest argues the district court erred in ordering the parties to repay and redeposit the monies disbursed in March 2010 because Oklahoma condemnation statutes only contemplate one commission's award. Arvest states that Oklahoma courts strictly adhere to the statutory condemnation proceedings and argues if Oklahoma's legislature had intended to allow for multiple commission awards, it would have said so.

Contrary to Arvest's assertion, Oklahoma's condemnation law does allow for the possibility of a court ordering a new or supplemental commissioners' report. *See* Okla. Stat. tit. 69, § 1203(e)(1) (A new appraisal should be ordered "as right and justice may require . . . on good cause shown."); *Garnett*, 296 P.2d at 767 (holding it was not error for the court to order a supplemental commissioners' report). Here, based on the original petition, the court initially asked the commissioners to value a taking of 1.88 acres; then, after the amended complaint was filed, to value a 5.16 acre taking; and then, after the second amended complaint was filed, without objection by any party, and while a jury trial was pending, to value the original 1.88 acre taking. *Cf. Garnett*, 296 P.2d at 767 ("The original report and the supplemental report made one complete report covering the property they were directed to value in the first

instance."). We find no support for Arvest's assertion this was contrary to Oklahoma condemnation law.

3. **The April 26, 2012 order and unjust enrichment**

Finally, Arvest argues the order mandating repayment of the first award should be reversed to prevent unjust enrichment in favor of SBA and ODOT. It asserts that ODOT made a business decision to condemn the whole 5.16 acre parcel, voluntarily deposited the amount of the estimated damage award based on the first commissioners' report, and should not be allowed to gain title to the property at a loss to Arvest.

We find no basis for equitable relief. ODOT acted in accordance with Oklahoma's policy to compensate property owners as soon as possible for a taking by depositing funds in court based on the first commissioners' report. Arvest chose to take an immediate distribution and chose to release its lien when it was clear the distribution was subject to challenge and revision. Arvest consented when ODOT filed its second amended complaint, and it did not disclose to the court it had released its lien. Arvest lost its first priority position through its own actions. "[E]quity may not be invoked when its aid becomes necessary through a party's own fault, and its effect is to allow plaintiffs to escape from circumstances created by their own acts." *Credithrift of Am., Inc. v. Amsbaugh*, 773 P.2d 1287, 1289 (Okla. 1988).

\* \* \* \*

In sum, it was clear when Arvest released its lien that the commissioners' award was preliminary, that a jury trial on the actual amount of just compensation

- 13 -

was pending, and that Arvest could be required to return any excess over the amount of the ultimate just compensation award. In short, Arvest released its lien before just compensation was determined.

## III. **CONCLUSION**

The judgment of the district court is affirmed.

ENTERED FOR THE COURT


Scott M. Matheson, Jr.
Circuit Judge